By the Court. Woodruff, J.
The defendant is engaged in a gross and palpable endeavor, by imitating the marks and labels used by the plaintiffs, to deceive the public and obtain patronage, which would in all probability be attracted to the plaintiffs.
This the defendant is doing, not only by closely imitating the plaintiffs’ marks and labels, but by falsely representing his soap as a Yankee manufacture, and made by persons named Williams, when, in truth, it is made in the City of New York by the defendant, William Johnson.
No words can describe or give a conviction of the fraud the defendant is practising, so clearly as the inspection of the marks and labels, and on that inspection no candid mind will say that the conduct of the defendant is not properly characterized by the language above employed, unless it be thought that, terms of more severe reproach were due to him.
There is no claim by the plaintiffs that soap is not an article composed of well-known ingredients, which any person may combine and see as soap of his manufacture at his pleasure.
*6 If there are distinguishing peculiarities wherein the plaintiffs’ soap has gained a name or reputation, we do not perceive that such peculiarities lie in any thing but the skill employed in combining the ingredients.
In all the benefits arising from that skill, and the reputation acquired thereby, the plaintiffs should be protected, so far as, consistently with the rights of others, it may be done.
Whatever marks or devices are employed by the plaintiffs, to denote that the soap is made by them, and is combined by the same skill that was employed in the making of soap heretofore made, and sold by them bearing the same marks and devices, are entitled to protection—as, for example, if the plaintiffs had chosen to stamp their soap with some impression having no other mean-' ing than to distinguish their manufacture from that of others, and had given it out as their mark, and, by this discrimination, soap of their manufacture had acquired reputation and sale, they would be plainly entitled to protection.
They have adopted, in reference to their manufacture (of an article which any and every one may manufacture and sell, if he please) a form and size of cake, a particular mode of covering and packing, a combination of three labels on each cake, an exterior handbill upon the box, and have so arranged the whole as to suggest, to any one desiring to purchase their soap, upon an inspection, that the article is theirs, and made by them, like that heretofore made, sold and known as their manufacture.
All this the defendant has copied, with an exactness which is calculated to deceive even the wary, much more to entrap those who are not in the exercise of a rigid scrutiny.
It is true that the defendant has put upon his labels New York as the place of manufacture, and L. Williams & Co., instead of Williams & Brothers, as the manufacturers. But the latter designation imports a falsehood, and tends rather to create than destroy the impression that the soap is made by the plaintiffs; and the use of the word New York, in its obscure printing, if it be read, falls- far short of suggesting to the public that, it is not the soap manufactured by the plaintiffs.
Lott Senator, in Taylor v. Carpenter, (reported 2 Sandf. Chy R. 613,) says, “ Honest competition relies only on the intrinsic merits of the article brought into market, and does not require a resort to *7 a false or fraudulent device or token. That certainly cannot deserve the appellation, which studiously gives to the product of pretended superior skill, the name and exact resemblance and imitation of the article with which it professes to compete. A dis guise is not usually assumed for an honest object. It is a mark more characteristic of deception and fraud. It defeats the very end and object contemplated by legitimate competition, the choice to the public to select between the articles sold, and operates as a deception and imposition on the dealer.”
The late Vice-Chancellor Sandford, in Coats v. Holbrook, (2 Sandford, Chy R. 594,) states the general rule to be well settled, as follows: “ A man is not to sell the goods or manufactures of B. under the show or pretence that they are the goods or manufactures of A., who, by superior skill or industry, has established the reputation of his articles in the market. The law will permit no person to practice a deception of that kind, or to use the means which contribute to effect it. He has no right, and he will not be allowed, to use the names, letters, marks or other symbols by which he may palm off upon buyers, as the manufacture of another, the article he is selling, and thereby attract to himself the patronage that, without such deceptive use of such names, etc., would have enured to the benefit of that other person, who first got up or was alone accustomed to use such names, marks, letters or symbols.”
It will be seen that in the cases referred to, as in the present, the imitation enjoined against embraced, not merely names, but a simulated mode of putting up the goods, even including the peculiar spools and wrappers or envelopes employed by the plaintiffs.
The same general principles are stated and illustrated with great force and clearness in the case of The Amoskeag Manufacturing Co. v. Spear, in this Court, (2 Sandf. S. C. Rep. 599,) by Mr. J. (now Ch. J.) Duer, and in reference to the variations in the labels used by the defendant, by the use of the words, New York, as the place, and L. Williams & Co. as the name of the manufacturer, his observations are singularly appropriate: “In order to convey a false mpression to the mind of the public as to the true origin or manufacture of goods, it is not necessary that the imitation of *8 an original trade mark shall be exact or perfect. It may be limited and partial. It may embrace variations that a comparison with the original would instantly disclose; yet a resemblance may still exist that was designed to mislead the public, and the effect intended may have been produced. Kor can it be doubted that, whenever this design is apparent, and this effect has followed, an injunction may rightfully be issued, and ought to be issued.” And in that case it is held that a style, as well as a name, of a manufacture is entitled to protection, and its unauthorized use is conclusive evidence of a fraudulent intent.
It is so palpable as to admit of no reasonable doubt that the devices employed by the defendant were calculated and intended by him to secure the benefit of the reputation which the plaintiffs had acquired. 'He is in this respect entitled to no favor. The Court in considering the propriety of enjoining him, pending the litigation, will not feel called upon to be zealous to aid him by refined distinctions so that he may evade the letter and violate the scope and spirit of the adjudged cases.
We have no hesitation in saying, that his acts are a clear infringement of the plaintiffs’ rights. He has copied the form, appearance, color, style, and substantial characteristics in all respects, which distinguish the plaintiffs’ goods.
The form of the present injunction is, perhaps, not that which is best adapted to secure the plaintiffs what they are clearly entitled to, and in this respect the terms of the injunction may be made to conform more clearly to the views which governed this Court in the ease of the Amoskeag Co. v. Spear, above referred to. Whether, upon the taking of the proofs in the cause, it will appear that the particular words, “ Genuine Yankee Soap,” are to be deemed descriptive of the kind of soap, which any one may make and sell by its proper name, or are terms properly designating the plaintiffs’ manufacture, and so to be descriptive of their peculiar skill in making an article already in known and common use by its proper and only generic name, soap, is perhaps not free from doubt. It is quite clear, that so far as it indicates the place of manufacture, it is a fraud on the part of the defendant to use it. Still the case referred to decides, that though it be in this particular a fraud on the part of the defendant, the plaintiffs cannot *9 have an injunction unless it shall appear that it designates their own manufacture, and that its use by the defendant operates to the prejudice of a right acquired by them.
Without deciding whether the defendant may or may not use either of the words, “ Genuine" or “Yankee,” in any possible combination, we think it sufficient to say, that he may not use the labels, or devices, or handbills which he is using, nor any other like labels, handbills, or devices, in imitation of, or simulating the labels, devices, or handbills used by the plaintiffs as set forth in the bill of complaint, or any other similar labels, devices, or handbills calculated to deceive the public, or create the belief that the soap he sells is the soap made or sold by the plaintiffs under the name of Genuine Yankee Soap.
If the defendant desires that the injunction order be made to conform to this latter view of the subject, his counsel may prepare and serve an order to that effect, in which case the plaintiffs’ counsel may submit amendments, and the same will be settled on two days’ notice.
The costs of the appeal, $10, will abide the event of the suit.
Ordered accordingly.