By the Court.—Brady, J.
J.—It may be conceded that the plaintiffs have no exclusive right to the name which they have adopted for their paper; that in the words used by them no person has any exclusive proprietary interest; that they belong to the language of the country, and may be employed in any way or for any purpose which ydll not defraud individuals or deceive the public. The courts in exercising the power which they possess of restraining the use of another’s trade mark, symbol, name or design, do not confine their interference to names, symbols, marks or designs, originating with the person first using them, and intended either to describe a quality assumed to be a distinguishing one of the goods manufactured or the thing created, or to distinguish the particular manufacture from others. The enforcement of the doctrine that trade marks shall not be simulated, does not depend entirely upon the alleged invasion of individual rights, but as well upon the broad principle that the public are entitled to protection from the use of previously appropriated names or symbols, in such manner as may deceive them, by inducing or leading to the purchase of one thing for another. It is not necessary, therefore, to the exercise of judicial powers that the plaintiffs should have any other property in the name used than that possessed by any other person.
The employment of words or names in common use may be adopted by various persons in the same business, employment or manufacture, in competition of trade or business, and be encouraged by all the attributes of courts and communities, but such use must' be independent and free from' the charge of deceitful simulation. There is neither honesty nor honorable competition in adopting, for a similar purpose, a name used by another, if it be employed in such a manner that the public may be imposed upon, and such, a result must follow if the simulation be so successful that one article or creation is' purchased or accepted for another. The adjudged cases both in England and in this country, bearing upon this subject, establish these *462 principles. The following are cited for illustration (Craft v. Day, 7 Beav., Hogg v. Kirby, 8 Ves., 214; Knott v. Morgan, 2 Keen, 219; Crawshay v. Thompson, 4 Man. & G., 357; Brooklyn White Lead Co. v. Masury, 25 Barb., 416; Lemoine v. Gauton, 2 E. D. Smith, 343; Amoskeag Man. Co. v. Spear, 2 Sandf., 599; Corwin v. Daly, 7 Bosw., 222; Partridge v. Menck, 2 Sandf, 622; Coats v. Holbrook, 2 Sandf, 586; Williams v. Johnson, 2 Bosw., 1).
A newspaper establishment is not excluded from the advantage of these rules. It is a species of property, and the rights which appertain to it, so far as they are private and exclusive, are entitled to the protection of the laws (Snowden v. Noah, 1 Hopk., 351; Bell v. Locke, 8 Paige, 74). The title of a newspaper may be a purely original one, and the proprietor for that reason entitled to its exclusive use. /He may create a word, or combination of words, for the particular designation of his paper, and in that way acquire an exclusive right to the use of the name employed. He may combine, as the plaintiffs have, well known English words in common use, to designate his paper, and its contents may in many respects be multiplied by publications in other prints, but the paper will, nevertheless, be oi’iginal in some, if not in many respects. / The individualities of editorial life are as rarely duplicated as those displayed in other pursuits ; and the intellectual vigor distinguishing the character and value of different prints, though equal in power will be essentially different in thought—in the principles announced and advocated, and in the reasoning by which the same theories are advanced and sought to be established.. A newspaper in its commanding elements is the result of mental labor, and should be protected to the same extent, at least in the use of symbols, names and marks as any other property. It may be that, as it changes from day to day or week to week, and is more or less re-created by each publication, becoming as it were the mirror as well as the chronicler of the times, it is better entitled to such protection by reason of its multiplied originality. It follows, from these conclusions, that the question which first presents itself, is whether the plaintiffs have acquired any rights in respect to their paper, which the defendants have in any way violated. It appears that the plaintiffs’ paper is called the “ National Police Gazette.” The title is a *463 combination of well known and familiar words. Gazette is a word of ancient standing, in its application to a newspaper. Gazetta, is said to have been a Venetian coin, which was the price of the first newspaper, and hence the name. The first Gazette was published at Oxford in 1665, and on the removal of the court to London the title was changed to the London Gazette (Webster’s Dictionary, unabridged). It also appears that the plaintiffs’ paper has been published weekly under that name for many years in this city, that its circulation is large and valuable, and that it was the only Police Gazette eo no-mine published .in the United States at the time of the publication of the paper complained of by them, and the only one published in this city. That the exception mentioned was of a Police Gazette of local circulation, published in California.
From these facts it is apparent that the plaintiffs have acquired a right connected with the publication of a newspaper called the National Police Gazette, which must be preserved against any fraud attempted to be perpetrated against them. They allege that the defendants are engaged in selling throughout this city a paper called “ The United States Police Gazette,” which, from its general character and apjrearance, is a fraudulent simulation of their paper. An inspection of that paper leads to such a conclusion. The words “Police Gazette,” forming a part of its title, are printed by type similar in character to those employed by the plaintiffs for their print, and a similar imitation characterizes the general form, style, 'type and device of the paper complained of. It also appears that the simulation is such as to lead to no other conclusion than that it was designed to—as it did in fact—mislead the public. The inquiry for the plaintiffs’ paper, under the abbreviated title of the “ Police Gazette,” is as natural as it is certain. Economy of labor of all kinds is a prominent characteristic of our people, and though there are many who prove to be “ creatures of large discourse,” the majority seek to accomplish, by as few words as possible, the object in view. It is shown, in this case, that when the “ United States Police Gazette” is folded and lying upon the newspaper stands, as is usual and customary, the words “ United States,” which make the difference in title between the plaintiffs’ paper and it, would be concealed—a circumstance which, in connection with the facts *464 that the plaintiffs’paper is the established “Police Gazette” of this city, and its general resemblance to their paper, would be well calculated to mislead the public. This is not, however, left to mere conjecture. The proof shows that the
United States Police Gazette” has been received for the ■‘Rational Police Gazette” by persons who desired the latter paper, and has been dealt with as such paper by express companies. It also appears that persons, much excited, have sought the plaintiffs’ establishment about articles which were supposed to have appeared in the plaintiffs’ paper, but had not in fact, and who seemed to be in ignorance of the existence of any other Police Gazette. It is unnecessary, however, to pursue this subject further. The plaintiffs have made out a case prima facie. It is enough to invoke the aid of this court that the sale of the “ United States Police Gazette” may operate fraudulently to the plaintiffs’ prejudice, and to warrant the continuance of the injunction until the trial. I am aware that in the case of Snowden v. Noah, (supra), the injunction was denied, but it was upon the ground, that though the plaintiffs’ paper was the “Rational Advocate,” and the defendant’s the “ Hew York Rational Advocate,” no imposture upon any existing establishment, or upon the public,-had been practiced, and, from the course of the defendant, none could be. His paper was an open competition, developed in such a way that the public could not be deceived. Had it been otherwise, there is no doubt that the result would have been different. If the defendant, in that case, had simulated the plaintiffs’ print, and in such a way that it might readily have been accepted for the latter, the injunction would have been granted. I am also aware that in. Bell v. Locke (supra), the Chancellor did-not think the defendant’s paper such a simulation of the complainant’s publication as to injure the circulation and the patronage of the latter, by deceiving the public, and inducing ■a belief that it was in reality the same paper. ■ It is apparent from the case, nevertheless, that if he had thought otherwise, he would have granted an injunction absolute.
It is said, however, that the defendants, who are not the publishers of the “ United States Police Gazette,” but the vendors thereof, cannot be united in one action, as they have been here, and that this action should fail, or the injunction be disssolved, *465 because they have not been proceeded against separately. I can discover no good reason for sustaining such a doctrine. It is true that the defendants are not the publishers of the paper complained of, but as the agents by whom, the mischief is done, however innocently, • they cannot claim immunity from restraint. They are tortfeasors. They are committing an injury to the plaintiffs, and doing wrong to the public. As tort feasors, they could be joined in one action (Colegrove v. The New York & New Haven & New York & Harlem R. R. Co., 20 N. Y., 492). Their acts are kindred. They sell a paper which should not be circulated in the form adopted by the' publisher, the plaintiffs objecting thereto, and it would be a very harsh administration of justice if the plaintiffs were compelled to bring a separate action against each. If the acts done by them were different in character and effect, and each therefore bound to bear bis individual burden, it might be otherwise considered. I entertain no doubt about the power and propriety,,in an action like this, of uniting all the wrong-doers, so far, at least, as to restrain them in one action from continuing their violations of the plaintiffs’ rights by similar, conduct. It is enough that particular acts of fraud, kindred in character, are charged (See Huggins v. King, &c., 3 Barb., 616, and cases cited; Hammond v. Hudson River Iron and Machine Co., 20 Barb., 378; Bewles v. Stewart, 1 Sch. & Lef., 209). Whether in this action, in the absence of any notice to the defendants to discontinue the sale of the paper complained of, the costs of this motion should be imposed upon them, although the injunction is continued, is a subject which I shall dispose' of upon the settlement of the order to be entered herein.