Monell, J.
I think that for the purposes of this motion, it sufficiently appears that the plaintiff has the right to the exclusive use of the device, adopted by him as a trademark. It may be, that upon the trial of the action, it may be made to appear that persons other than the plaintiff have used the same device, either before it was adopted by him, or for so long a time before the commencement of this action, as to raise the pre *209 sumption of abandonment by him. At present, however, the" proofs are sufficient on that point to sustain the action.
I do not construe the act of Congress authorizing the issuing of letters patent for trademarks (Laws of U. S., July 8, 1870), as strengthening the plaintiff’s title to the device which he claims to be the proprietor of, or as depriving the defendants of the right to contest such proprietorship.
The act merely provides for the registration of trademarks, upon the declaration of the owner of the exclusive right to its use, and authorizes the commissioner of patents to certify to the registration. A trademark, thus registered is protected for the space" of thirty-years, and remedies are provided for its infringement,, but by express terms all remedies at law or in equity,, which existed prior to the act, are preserved (§ 83).
The act, therefore, furnishes no further or greater pretection than is given in the remedies provided in it, which are no other than such as existed previously, and could be pursued in any court of -competent jurisdiction, under the common law right of ownership in the trademark.
The question in this case, therefore, must be determined upon principles applicable to the common law right of proprietorship, and without reference to the act of Congress, from which I do not perceive it receives any aid.
In that view the defendants are in a position to contest the plaintiff’s right of property in their trademark, or to make any other defense to the action which they may have.
The defense of the defendants rests mainly upon the allegation of so essential a difference between their device and the device of the plaintiff, as to render it altogether improbable, if not wholly impossible, that any person, even the most unwary, could be deceived,
*210 They claim that the difference consists in the substitution by them of a small boar surmounting a globe in the place of a fat pig or hog as used by'the plaintiffs.
Upon an inspection of the device the difference is readily seen, and it is quite probable, that upon such an inspection no person would be misled. But when the devices are separated and seen apart, the result of the examination might be very different.
The question in these cases always is, whether there is such a similarity of the two devices, as to deceive the public. It is not required that the imitation shall be so close as to require a careful examination, to detect the difference; nor that it shall be such, that persons entirely familiar with one would not be mistaken. But it must have such a resemblance to the genuine, that the general public would be likely to mistake the one for the other.
Although the plaintiffs’ trademark consists solely of a pig or hog used in the manner'described, and not of any combination of letters connected with such device, or of any material upon which it is stamped ; and although the alleged imitation may be such that even upon a slight or casual examination, the difference would be at once seen,—yet the plaintiffs’ manufacture has long been known in the market as the “pig brand,,” and as such, it is alleged, .it is inquired for by persons desiring to purchase.
It would be difficult to furnish any satisfactory evidence to establish how far an imitation of a trademark was calculated to mislead the public. Instances of actual deception would be the best evidence, but such evidence it would be difficult to obtain. The opinions of witnesses, although experts, formed upon an inspection of the genuine and counterfeit, would be mere opinions. They might or might not be deceived, but they could not say whether others would or would not *211 be, so that the court is left to make its conclusions mainly, if not wholly, from its own inspection.
There is, however, an ingredient in this case which essentially aids me in determining the effect of the defendants’ alleged imitation.
The plaintiffs’ manufacture of lard is known among the trade as the “pig brand ” of lard, and is bought and sold by that designation, and which designation has reference to the mark or device of a “pig ” upon the packages in which it is placed for sale.
With purchasers, therefore, unacquainted with the particular device of the plaintiff, but desiring to purchase, by reason of its good reputation, the “pig brand” of lard, the defendants’ imitation would pass as currently as the plaintiffs’. Indeed, I know of no better test than this incident furnishes. Suppose a trader desirous of purchasing a quantity of lard, is told that the “pigbrand” is the best in the market; and upon inquiring for it by that name, is furnished with the defendants’ manufacture, having upon the packages their trademark, which consists of a small boar upon a globe; can it' be doubted that the “ small boar” device, would pass with such a purchaser for the “ pig brand ? ” I think not. No one familiar with the plaintiff’s design would be deceived. The difference between a pig and a boar would probably be detected and the plaintiff would need no protection. But with persons unacquainted with the precise or particular device, it would be quite, otherwise; and it is with such person that plaintiff could be greatly injured by the imitation.
In Gillott v. Esterbrook* (48 N. Y., 374), the plaintiff’s trademark consisted of the numerals 303 impressed upon steel pens of his manufacture, which particular manufacture was known in the market and among dealers as the number 303 pens. The defendant used the same numerals impressed upon pens of his *212 manufacture. The court, in restraining the infringement, recognizes the element or ingredient, which consists of the name or designation by which the trademark is known among traders, and makes it a prominent reason for assuming injury to the owner of it.
Not only have the courts recognized the propriety of stringently protecting the right of property in a trademark, but the legislature of this State many years since,* and recently the Congress of the United States, have enacted laws to preserve such rights ; the former act declaring that its infringement shall be a misdemeanor, punishable by fine and imprisonment.
The intent of the imitation will necessarily, in some degree, influence the determination of these questions. If no evil design is apparent, or if none can be established or discovered, stronger evidence may be required, than if the purpose was clear and undoubted.
In this case, I cannot satisfy myself that the defendants did not intend to so far assimilate their device to the device of the plaintiff, as to render it quite possible that it would be accepted among traders, and in the market, as the “pig brand,” and thus enable them to profit by the reputation which the plaintiff had gained for that brand of lard. If their purpose was not so, then why the boar at all; or why the same tin or other metal plate and the same words and disposition of them, of “prime leaf lard” and of “trademark.” It was said in one case (Williams v. Johnson, 2 Bosw., 7) that what will be protected embraces not merely names (devices) but the manner of putting up the articles, even including the wrappers or envelopes employed by the person entitled to the trademark. And in a recent case decided by ine at special term (Cooke v. Starkweather, 13 Abb. Pr. N. S., 392), I held that where a peculiar device is applied to a box or bar *213 rel which had been especially prepared in a particular manner, to receive and give prominence to the design, such specially prepared box or barrel constituted a part of the trademark, and might participate in the protection which would be given to the trademark itself.
The fact, therefore, that in some particulars, except in the substitution of the boar for the pig or hog, the defendants have used the same material for securing their trademark, of the same shape and size, with the same distribution of words indicating the commodity, is sufficient, I think, to convict them of the design to invade the rights of the plaintiff.
A mere design to injure would not, of itself, be sufficient. It must be accompanied by evidence of actual or prospective injury, but in establishing the injury the intent may properly be considered.
Upon a careful examination of the question, I am of opinion that the trademark used by the defendants, is such an imitation of the plaintiff’s trademark, as is calculated to mislead and deceive, the public.
I shall, therefore continue the injunction pendente lite.

 Reported below in 47 Barb. 455.

 Acts of 1845 and 1850, subsequently superseded by Laws of 1862, p. 513, c. 306 ; Laws of 1863, p. 355, c. 309.