# MERCHANTS' DETECTIVE ASSOCIATION

## v.

# DETECTIVE MERCANTILE AGENCY.

*Corporations—Corporate Name as a Trade Mark—Fraud—Injunction.*

1. A simulation of the name, character, system and methods of another, for the purpose of deceiving the public and leading persons dealing with the usurper to suppose that they are really dealing with the party whose rights are thus usurped, constitutes an offense which entitles the party injured to an injunction.

2. A corporation is entitled to protection in the use of its corporate name upon the same principles and at least to the same extent that individuals are protected in the use of trade marks.

3. It *seems* that a corporation is entitled to protection in the use of its corporate name as a trade mark, although the words composing such name are generic terms or descriptive words.

[Opinion filed January 18, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

This is an appeal from a decree in chancery sustaining a demurrer to and dismissing the complainant's bill. The bill alleges that the complainant is a corporation duly incorporated under the laws of this State on or about the 18th day of December, 1884, under the name and style of "The Merchants' Detective Association," and having its principal office and place of business at 164 Dearborn Street, Chicago; that at that date no association or body corporate existed in this State or elsewhere under that name or under any other name similar in sound or meaning; that under said name and style the complainant announced its corporate existence and capacity to the world, transacted its business, carried on an extensive and continuous correspondence, and entered into and sustained intimate and valuable business relations with mercantile and business men of all classes throughout this State and else-

where; that by said name and style the complainant is known and by that name only; that the chief objects and purposes of the complainant's corporate organization is the collection of debts due to merchants, traders and others carrying on lawful occupations, and that in conducting said business it had employed a large staff of clerks and agents, and had expended large sums of money, amounting to many thousand dollars annually; that it has had great success in the collection of debts, chiefly through its detective system, which has always peculiarly distinguished its work, and has thereby built up an extensive and lucrative clientage among the business public of this State and elsewhere; that it was by the adoption and use of its trademark, "The Merchants' Detective Association," which was new and unused by any other firm or body, the complainant acquired its start in business and much of its fame and acquaintance, and by the selection, adoption and use of the style and character of a Detective Association, it has lived under a name peculiarly its own, and under that name has acquired its large and increasingly valuable interests; that it has always claimed and still claims the right to use and enjoy its said name without hindrance or interference either by direct assumption or fraudulent imitation on the part of any other association, agency or corporation; that said name and style has been and is a very valuable franchise, and is identified in the public mind with the success, honesty, fidelity and energy always exhibited by the complainant in its business, and with no other organization or agency; that the complainant's corporate existence is only the continuation of a previous unincorporated association; that for thirteen years previous to said incorporation the complainant had existed as such unincorporated association under the same name, and had become well and widely known throughout the State and elsewhere, and that its reputation and the good will of its business passed to said corporation upon its organization.

The bill further alleges that, in February, 1887, certain envious and evil disposed persons, being covetous of the fame and standing of the complainant, fraudulently and by false, deceitful and malicious methods, assumed and adopted and do

now use, publish and adopt a name, style and title for an organization formed by them in this State, so similar in sound, meaning and general application, to the complainant's name and title, that great injury has been and is being wrought thereby to the "complainant's franchise and business; that said new organization is denominated "The Detective Mercantile Agency," and has been organized and established by one Sanborn and divers other persons who are residents of this State; that said Sanborn was the promoter and organizer and is the president and active manager of said "Detective Mercantile Agency;" that said organization, in its arrangements, details, name, forms, system, circulars and other means of conducting its business was founded upon and organized through the fraudulent practices of said Sanborn in this: that said Sanborn, by means of special visits and inquiries at the office of the complainant, and by means of false and fraudulent pretenses then and there made, learned and studied the name, system, methods and other instrumentalities of the complainant, and having so learned said methods and system, forthwith proceeded to use and adopt them and still does adopt and use them for the business of said Detective Mercantile Agency, for the express purpose of deceiving the complainant's patrons and customers and the general public, and that said patrons and customers and the general public are thereby deceived and defrauded; that said Detective Mercantile Agency, for the deceitful, fraudulent and malicious purpose of misleading the public by the similarity of title, the adoption of the complainant's methods, the use of stationery as closely resembling that of the complainant as possible, and by circulars framed and expressed in language similar to those of the complainant, assumes the place of the complainant and is surreptitiously and fraudulently stealing the complainant's clientage and attracting away the complainant's customers and defeating the good will and value of the complainant's business, so that it may enjoy the same, to the complainant's great and lasting injury; that said acts, pretenses and doings do actually mislead the complainant's customers and patrons, and induce them to suppose that in dealing with said Detective Mercantile Agency, they are dealing

Merchants' Detective Ass'n v. Detective Mercantile Agency.

with the complainant, and that by said acts and doings ordinary business men, acting with ordinary prudence and caution, are misled in manner aforesaid; that the letters and correspondence received by the complainant from its friends and patrons are replete with complaints of the confusion created by said Detective Mercantile Agency, and that correspondence of great importance has been diverted from its intended recipients by such confusion; that money and information of great value, if sent speedily, have been delayed and turned aside into wrong channels to the great loss of the complainant and its clients; that said Detective Mercantile Agency, for the purpose of injuring the complainant and of still further deceiving the public, has lately removed its office and place of business from 60 Wabash Avenue to 142 Dearborn Street, Chicago, that being on the same street and near the place where the complainant has its office and transacts its business; that the complainant has repeatedly requested said Detective Mercantile Agency, said Sanborn and said other persons, to discon tinue the use of said name so misleading to the public, yet they persist in the use of said name and refuse to discontinue their aforesaid deceitful practices; that said parties deceived the Secretary of State by the adoption of a name apparently different but really the same as that of the complainant, and that any license or official authority of any kind, if such was ever given by the Secretary of State to said parties, was given inadvertently and without due consideration and in mistake, and was given in violation of the complainant's rights in the premises.

The bill prays for an injunction restraining said new organization, said Sanborn and said other persons, from using the name, style or title of "The Detective Mercantile Agency," and from doing any business under that name, and from using any name, style or title containing the word "Detective," and also a general prayer for relief.

Mr. ROBERT H. VICKERS, for appellant.

Messrs. PAYNE & PORTER, for appellee.

The name Merchants' Detective Association does not contain a word capable of being adopted as a trade-mark.

Mr. Justice Strong in Canal Co. v. Clark, 13 Wallace, 311, says: "The trade-mark must either by itself, or by association, point distinctly to the origin or ownership of the article to which it is applied. * * * No one can claim protection for the exclusive use of a trade-name or trade-mark, which would practically give him a monopoly in the sale of any goods, other than those produced or made by himself, * * * nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients or characteristics, be employed as a trade-mark, and the exclusive use of it be entitled to legal protection."

The names are not the same, the only word used in common is detective, and this does not occupy the same relative position in the names. Agency and association, are very dissimilar.

Terms in common use, to designate a trade or occupation, can not be exclusively appropriated by any one. Choquski v. Cohen, 39 Cal. 501; Town v. Stetson, 5 Abb. P. R. (N. S.) 218; 2 Kent, 366.

Courts of equity clearly have power to restrain the use of a name, when a proper case is made, but it seems clear to us this is not such a case.

The same question arose in England in 1847. The London and Provincial Law Assurance Society, registered in 1846, sued the London and Provincial Joint-Stock Life Insurance Company, registered in 1847, for an injunction, alleging injury on account of the use in common, of the words London and Provincial. The Vice-Chancellor, in refusing the application, said:

"The court will consider whether there is such deception as is likely to produce injury. Now it strikes me, that when persons are going to insure, they would look at the nature of the society before doing so ; the first describes itself as a Law Assurance Society; that is to say, a society which lawyers maintain. The other is a joint stock Life Insurance Company. No assumption of anything like the feature which is described by the word ' law.' * * * I think it a very fair question, whether any damage is likely to arise." 11 Jurist, p. 938.

The Vice-Chancellor remanded the plaintiff to its remedy at law.

The distinction pointed out by the Vice-Chancellor runs through the case at bar. The complainant corporation is the Merchants' Association, *i. e.*, an association of Merchants, while the defendant corporation is only a Mercantile Agency, a distinction most manifest. See also Bell v. Loche, 8 Ill. p. 74.

Bailey, J. The complainant is a corporation under the laws of this State. In forming its corporate organization it was required by law to select a corporate name, and having selected such name it is entitled to be protected in its use upon the same principle and at least to the same extent that individuals are protected in the use of trade-marks. Holmes, Booth & Hayden v. Holmes, Booth & Atwood Manufacturing Co., 37 Conn. 278; Newby v. Oregon Central R. R. Co., Deady, 609.

Considering the complainant's corporate name, then, merely as its trade-mark, the question arises whether, under the circumstances alleged in the bill, the complainant is entitled to protection against infringement, or against any of the fraudulent acts alleged in the bill.

The bill, of which a substantial epitome is set forth in the foregoing statement, is somewhat inartificially drawn, but it appears with sufficient certainty from its averments that the complainant, in December, 1884, after having existed as an unincorporated association for thirteen years under the name of " The Merchants' Detective Association," became incorporated under that name, and since that time, as well as during said thirteen years, by methods peculiarly its own, has been and is doing a large and lucrative business in the way of collecting debts due to merchants, traders and others carrying on lawful occupations ; that in February, 1887, the defendants, with the fraudulent purpose and design of deceiving the complainant's patrons and the public, and of fraudulently usurping the business and patronage which the complainant was enjoying, formed a new organization under the name of " The

Detective Mercantile Agency," and embarked in the same line of business in which the complainant was engaged; that in prosecution of their fraudulent design, the defendants have not only adopted said name, but after having surreptitiously become acquainted with the complainant's system and methods and the instrumentalities by which its business was being carried on, adopted the same in carrying on the business of their new organization, and to complete the deception, made use of stationery, as closely as possible resembling that used by the complainant, and issued circulars framed and expressed in the same language as those issued by the complainant, and in all their methods of doing business so closely copied the methods used by the complainant, that business men, using ordinary prudence and caution, were induced to deal with said new organization under the supposition that they were dealing with the complainant; that in further prosecution of their fraudulent designs, the defendants have recently removed the office and place of business of their new organization to the same street, the same side of the street, and within a few doors of the place where the complainant's office and place of business is situated; that as a result the complainant's patrons and customers have been and are being deceived and the complainant's business has been and is being greatly injured.

It is doubtless the rules that generic terms or mere descriptive words are not ordinarily susceptible of appropriation by an individual as a trade-mark, such words being the common property of the public. Thompson v. Winchester, 19 Pick. 214; Fulton v. Sellers, 4 Brewster, 42; Chavin v. Walker, L. R., 5 Ch. Div. 850; Dunbar v. Glenn, 42 Wis. 118; Gilman v. Hunnewell, 122 Mass. 139; Candee v. Deere, 54 Ill. 439.

It may be doubted whether the foregoing rule should be held to apply to the name of a corporation when treated as a trade-mark. Under the law the corporate name is a necessary element in the existence of the corporation, and the necessary consequence of the wrongful appropriation of such name is to injure the business and rights of the corporation by destroying or confusing its identity. The corporate name is, therefore, a trade-mark from the necessity of the case, and there is

consequently much reason for holding that a corporation should be protected in the use of its name as a trade-mark, irrespective of whether the words composing such name are generic or descriptive or not.   See Newby v. Oregon Central R. R. Co., *supra.*

But waiving the point last suggested, and applying to the complainant's name only those rules which are applicable to ordinary trade-marks, it must be conceded that, while the general rule debars a party from protection in the use of descriptive words as a trade-mark, the tendency of the more recent decisions seems to be to hold that the fact that the words are descriptive will not prevent the issuance of an injunction where there is conclusive evidence of a fraudulent design and sufficient reason to presume that the public will be misled.   In Knott v. Morgan, 3 Keen, 215, this view seems to have been first adopted.   In that case the London Conveyance Company, having their omnibuses painted and their servants clothed in a special and distinctive manner, the defendant began to run omnibuses similarly painted, with servants similarly clothed.   An injunction having been issued restraining the defendant from imitating the plaintiffs' line of omnibuses, the court said: "It is not to be said that the plaintiffs have any exclusive right to the words 'Conveyance Company,' or 'London Conveyance Company,' or any other words, but they have a right to call upon this court to restrain the defendant from fraudulently using precisely the same words and devices which they have taken for the purpose of distinguishing their property and thereby depriving them of the fair profits of their business by attracting custom on false representation that carriages, really the defendant's, belong to and are under the management of the plaintiffs."   In Wollam v. Ratcliff, 1 H. & M. 259, Vice-Chancellor Wood, commenting on the foregoing case, said that there "the words 'Conveyance Company,' the green omnibus, etc., were held sufficient together to entitle the plaintiffs to an injunction.   The defendant might have had those words painted on a yellow omnibus without objection, and so of the other resemblances; the wrong lay in their accumulation, not in any one of them alone."

258    APPELLATE COURTS OF ILLINOIS.

Merchants' Detective Ass'n v. Detective. Mercantile Agency.

In Croft v. Day, 7 Beavan, 84, the plaintiffs, being the executors of the surviving partner of the firm of "Day & Martin," at 97 High Holburn, London, the blacking manufacturers, who sold their blacking in bottles labeled with the name and address of the firm, the defendant obtained the authority of a man named Martin to use his name, and began to sell blacking in bottles labeled with the name and address of "Day & Martin, 90½ Holburn Hill," in imitation of the genuine labels. On motion of the plaintiffs an injunction was granted to restrain the defendant from using labels or showcards calculated to produce deception. Lord Langdale, in rendering the decision, reiterated the principle laid down in Knott v. Morgan, and concluded his opinion as follows: "My decision does not depend on any peculiar or exclusive right the plaintiffs have to use the name of Day & Martin, but upon the fact of the defendant's using those names in connection with certain circumstances and in a manner calculated to mislead the public, and to enable the defendant to obtain, at the expense of Day's estate, a benefit for himself, to which he is not in fair and honest dealing entitled."

In Lee v. Halley, L. R. 5 Ch. App. Cas. 155, the complainants being coal merchants carrying on business at 22 Pall Mall, London, as " The Guinea Coal Company," the defendant, their former manager, set up for himself in Beaufort Buildings, Strand, as " The Pall Mall Guinea Coal Company," and afterward removed to 46 Pall Mall. An injunction having been granted restraining the defendant from trading in that name in Pall Mall, it was held by the Court of Appeal in Chancery that the injunction was properly issued. In announcing the decision Lord Justice Giffard said: "I quite agree that they (the plaintiffs) have no property in the name, but the principle upon which the cases on this subject proceed is, not that there is property in the word, but that it is a fraud on a person who has an established trade and carries it on under a given name, that some other person should assume the same name, or the same name, with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name.    *

\*   \*   I think this injunction has been properly granted upon the well known principles of this court, which are applicable to all cases of this description, viz., that it is a fraud on the part of a defendant to set up business under such a designation as is calculated to lead and does lead other people to suppose that his business is the business of another person." .

In McLean v. Fleming, 96 U. S. 245, it is held that it is not necessary to entitle a party to an injunction that a specific trade-mark has been infringed, but that it is sufficient that the court is satisfied that there was an intent on the part of the defendant to palm off his goods as the goods of the complainant. See also Williams v. Johnson, 2 Bosw. 1.

In this case the allegations of the bill being admitted by the demurrer, the fraudulent design alleged as well as the fraudulent means employed by the defendants for its accomplishment, stand admitted of record. The fraud being thus conceded, we think it clear, in the light of the authorities above cited, that the complainant has shown itself entitled to relief. The complainant has a right to protection against a usurpation of its patronage, its business, its credit and reputation by false, fraudulent and improper means. Honest and open competition is not forbidden by law, and furnishes no ground for complaint. But a simulation of the name, character, system and methods of another, for the purpose of deceiving the public and leading persons dealing with the usurper to suppose that they are really dealing with the party whose rights are thus usurped, constitutes an offense against the rules of honesty and fair dealing which should invoke the aid of a court of equity. We think the demurrer should be overruled and the defendants required to answer the bill, and if, upon final hearing the allegations of fraud are sustained, the court should apply such remedy as will protect the complainant against a continuation of the fraud.

The decree will be reversed and the cause remanded with directions to the court below to overrule the demurrer, with leave to the defendants to answer, or for further proceedings.

*Decree reversed.*