### A. B. Nokes v. Alexander Mueller.

1. TRADE-MARKS—*The General Rule Relating to.*—As a general rule a name, generic terms, or mere descriptive words, are not ordinarily susceptible of appropriation by an individual as a trade-mark, but this rule does not obtain where there is conclusive evidence of fraudulent design, and sufficient reason to believe the public will be misled.

**Bill for an Injunction.**—Appeal from the Circuit Court of Sangamon County; the Hon. JACOB FOUKE, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 2, 1897.

S. H. CUMMINS, attorney for appellant.

A generic name, merely descriptive of the article made or sold, or its qualities, ingredients or characteristics, and which may be applied truthfully by other makers or dealers, is not entitled to protection as a trade-mark; to constitute such a trade-mark or name as will give the first who applies the same exclusive right to its use, it must not be such as will

merely indicate the composition or quality of the article to which it is applied, or to the particular country or district where produced or manufactured. Bolander v. Peterson, 136 Ill. 215; see also Apollinaris Company v. Scherer, 27 Fed. Rep. 18; Ball v. Siegel, 116 Ill. 137; Hoyt v. Hoyt, 143 Pa. St. 623; Mumm v. Kirk, 40 Fed. Rep. 589.

McGUIRE & SALZENSTEIN, attorneys for appellee.

Honest and open competition is not forbidden by law, and furnishes no ground for complaint; but a simulation of the name, character, system and method of another for the purpose of deceiving the public and leading persons dealing with the usurper to suppose they are really dealing with the party whose rights are thus usurped, constitutes an offense against the rules of honesty and fair dealing which should invoke the aid of a court of equity. Merchants' Detective Association v. Detective Mercantile Agency, 25 Ill. App. 250; see also McLean v. Fleming, 96 U. S. 245; Mossler v. Jacobs, 66 Ill. App. 571; Van Auken Co. v. Van Auken Steam Specialty Co., 57 Ill. App. 240; Pillsbury v. Pillsbury W. F. M. Co., 64 Fed. Rep. 841; Garrett v. Garrett, 78 Id. 472; Singer Manufacturing Company v. June Manufacturing Company, 163 U. S. 169.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

The appellee filed a bill for an injunction in the Circuit Court of Sangamon County, to restrain the appellant from using certain wagons in selling and delivering milk in the city of Springfield, painted in a particular style, and with certain lettering and pictures thereon. Notice of the application for an injunction was given and appellant resisted this motion. After a contested hearing the motion was allowed, and upon the order of the court the writ of injunction issued. A demurrer was filed by appellee to the bill, which upon a hearing was overruled. Answer and a replication thereto were filed. A hearing was had upon the testimony of the witnesses taken in open court before the chancellor and the injunction made perpetual.

There is no serious conflict in the evidence in this case. The facts as they appear from the evidence are substantially as follows:

Both the parties were engaged in the sale of milk in the city of Springfield, Illinois. The appellee had been engaged in this business for about sixteen years, and during all this time in supplying his customers had used wagons with the running gear painted yellow, the body brown and the tops white. In front of the entrance to the wagon on either side and on the white top, there was painted the picture of two cows, some trees, a running brook, some lilies and a fence. On the rear of the entrance, on the white top, there was painted on either side, in black letters, " Walnut Grove Dairy," and also under this lettering was the name in black letters, " Alexander Mueller." During the time appellee had been engaged in this business, he had established quite a profitable trade, and at the time this suit was brought, he had six hundred customers and was using four wagons in the delivery and sale of milk. In conducting his business he used wagons painted and with the lettering and pictures as above described. All this time his place was known as " Walnut Grove Farm."

Appellant commenced in the dairy business in the city of Springfield early in the month of February, 1895, using a wagon to deliver milk to his customers, with a black top and with no name on it. Shortly after this he bought of a man named Brown two dairy wagons, both with black tops, and on each of these was painted the words " East Side Dairy." Appellant continued to use these wagons in his milk business from the time he purchased them until shortly before the commencement of this suit, when he took them to the shop of Brand & Groenke, where appellee had his wagons painted and where he had two wagons at this time in the course of construction. Prior to this time appellant had had no work done at this shop. These wagons were painted, yellow running gear, body brown and top white. In front of the entrance on either side was a picture of two cows, a mountain, a swiss castle with a cupola, a running brook and

some lilies. In the rear of the entrance and on either side, on the white top, there was in black letters the name "Walnut Park Dairy," and under this the name "A. B. Nokes." These wagons he was using at the time of the filing of the bill in this suit. At this time appellant was living on what was known as the "Walnut Park Farm." It was owned by Richardson & Booth. He had rented it from them for one year from the first day of March, 1896. They bought it in 1890 or 1891. One of them had a sign painted with the words on it "Walnut Park Farm" and placed on a tree in the pasture. Prior to this for several years it had been known as the "Watson Farm." Since that some of the witnesses say it was as well known by the latter name as the former.

The decree entered by the court below in this case restrained the appellant from using wagons painted and with inscriptions and pictures on them similar to those on the wagons of appellee, in the sale of milk to his customers in the city of Springfield.

During the sixteen years the appellee had been engaged in business, his customers, and no doubt many others, had become familiar with the wagons from which he sold his milk. On appellant's wagons, the running gear was painted yellow, the body brown and the top white, like appellee's. The pictures on appellant's wagon were substantially like his, and the inscriptions on the sides of the white top were the same with slight alterations.

In Lee v. Haley, L. R., 5 Ch. App. Cas. 155, Lord Justice Giffard said : " I quite agree that they—the plaintiffs—have no property in the name, but the principle upon which the cases on this subject proceed is, not that there is property in the word, but that it is a fraud on a person who has an established trade and carries it on under a given name, that some other person should assume the same name with slight alteration in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name. * * * I think the injunction has been properly granted upon the well known

principles of this court, which are applicable to all cases of this description, viz., that it is a fraud on the part of the defendant to set up business under such a designation as is calculated to lead and does lead other people to suppose that his business is the business of another person." This doctrine is approved and adopted in the case of Merchants' Detective Association v. Detective Mercantile Agency, 25 Ill. App. 250.

The appellee in this case in the sixteen years he has been in business, has established a large and profitable trade, and carries it on under a given name, and should be protected from those attempting to usurp his business. The wrong in this case does not consist in appellant painting the running gear of his wagons yellow, or the body brown, or the top white, etc. The wrong is in their accumulation, not in any one of them alone; but all combined are sufficient to entitle appellee to an injunction. Merchants' Detective Ass'n v. Detective Mercantile Agency, *supra*. We hold the fact that appellant painted his wagon like appellee's and the pictures and inscription thereon were substantially similar, that they were liable to mislead customers. It seems from the evidence that some persons were thus misled. Mossler v. Jacobs, 66 Ill. App. 571. We recognize the doctrine that as a general rule a name, generic terms, or mere descriptive words, are not ordinarily susceptible of appropriation by an individual as a trade-mark, such words being the property of the public. But this rule does not obtain when there is conclusive evidence of fraudulent design, and sufficient reason to believe the public will be misled. The appellant sets up as defense that what he did in painting, lettering and placing pictures on his wagons was done in compliance with the statute compelling vendors of milk in any city of this State to put upon their wagons conspicuously the name of the person vending the same and the locality from which it was obtained or produced. There is no averment in the answer or any evidence in the record that he was actuated by any such motive. It can not be maintained that appellee so impoverished the vocabulary of the English lan-

guage and so exhausted the taste and skill of the artist who lettered and painted the pictures on his wagons, that appellant was compelled to imitate his so closely. We feel constrained to hold from the facts and circumstances in proof of this case that his purpose was to usurp appellee's business and draw some of his customers to him, and would thereby injure appellee's business he had been so many years in establishing.

We think this case does not fall within the line of the authorities cited by appellant's counsel, but does within the case of the Merchants' Detective Ass'n v. The Detective Mercantile Agency, *supra*, and the cases therein cited and so liberally quoted from by the learned jurist who wrote the opinion.

The decree of the Circuit Court will therefore be affirmed.