Elks v. Elks.

BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF THE
UNITED STATES OF AMERICA· *et al. v.* IMPROVED BEN-
EVOLENT AND PROTECTIVE ORDER OF ELKS OF THE
WORLD.

(*Jackson.*    April Term, 1909.)

CORPORATIONS.    Prior corporation is entitled to injunction
against the use of a similar name by a subsequent corporation,
when.

A corporation chartered, in the year 1868, under the name of the
"Benevolent and Protective Order of Elks of the United States
of America," not engaged in commercial business, but employ-
ing certain business activities, and maintaining certain busi-
ness institutions, clubhouses, a home for the aged and invalid
members, and engaged in conducting charities and supplying
amusements for its members, who are all white persons, has
acquired such valuable rights, financial, business, and social
value in its said name, in the nature of a trade-name, that it
is entitled to an injunction restraining a subsequently char-
tered corporation, composed of colored people, and organized
for similar purposes, from using its charter name of "Improved
Benevolent and Protective Order of Elks of the World," and
also from using complainant's badge, emblems, ritual, pass-
words, etc.

Cases cited and approved:  Society v. Society, 1 Tenn. Chy., 97;
and numerous cases in other States, on pages 146 and 147 of the
opinion.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court. F. H. HEISKELL, Chancellor.

J. N. ESTES, for complainants.

THOS. M. SCRUGGS and B. F. BOOTH, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainant alleged in its bill that it was a corporation chartered under the name of "Benevolent and Protective Order of Elks of the United States of America," and that its members were generally known over the United States as the "Elks;" that the defendant was subsequently chartered under the name of the "Improved Benevolent and Protective Order of Elks of the World;" that the similarity of the two names has not only produced confusion in the operations of the two bodies, but, in the nature of things, will continue to cause confusion, in the fact that mail intended for the one will be delivered to the other, that the membership

of the one will be confounded in the public mind with the membership of the other, likewise the enterprises whereby money is raised for charitable purposes, such as baseball games, theatrical entertainments, etc., which require advertisement and public patronage; that thereby the complainant will be greatly depleted and deteriorated in its membership, which will cause large financial losses, since extensive revenues are derived from this source. It is shown in the bill that, while complainant is not technically engaged in business, it owns property worth $9,000,000, has an annual income of $4,000,000 and yearly dispenses in charity $500,000. It also appears from the bill that the complainant owns clubhouses in which its members are entertained; also that it maintains a home for its aged and invalid members, wherein they are cared for in comfort and happiness. It is alleged, as above indicated, that it conducts enterprises of a business nature from time to time for the purpose of raising money to expend in charity, not only upon its own members, but upon worthy objects outside of the order. It appears that the organization, from a small beginning in 1868, has grown to a membership of more than 225,000 in the United States, composed only of white persons, citizens of the United States, within prescribed age limits. It was alleged in the bill that defendant had not only appropriated complainant's name in substance, but had also copied its ritual and its badge, the latter being very distinctive, bearing an elk's head with antlers spread.

The bill was filed in the name of the complainant, Benevolent and Protective Order of Elks of the United States of America, through a committee appointed by the Grand Lodge, the governing body of the order, and was also joined in by Memphis Lodge, No. 27, likewise a corporation; this local body having a membership of more than 800.

There was a prayer for an injunction to prevent the use of the name "Improved Benevolent and Protective Order of Elks of the World;" also the use of complainant's badge, emblems, ritual, passwords, etc.

A demurrer was filed, making the point that the rights asserted in the bill were not property rights, and that the wrongs complained of were not such as a court of equity would protect by injunction. The demurrer was overruled, and thereupon the defendant filed its answer.

The answer admitted that the defendant was chartered and organized under the name charged in the bill, but denied that it was using the ritual, passwords, badges, or emblems of the complainant, or that there was any danger of the two orders being mistaken for each other, and relied particularly upon the fact that the members of defendant were colored people, while the members of the complainant were white people.

Upon the hearing the chancellor sustained the bill and decreed a perpetual injunction. From this decree the defendant prayed an appeal to the court of civil appeals, where the decree was affirmed. The defendant has now filed a petition, asking that the cause be re-

moved to this court by the writ of *certiorari*. In the petition the evidence is not referred to; but the case of complainant is put upon the allegations of the bill, and we shall so treat the case. However, we may add that the evidence sustains the substance of the bill, and also sustains the averment of the answer that the defendant order is composed of colored people.

We are of the opinion that the injunction was properly awarded and made perpetual. While the complainant was not engaged in business for profit, in the sense of commerce and trade, yet it employed certain business activities for the purpose of maintaining itself and to procure funds to carry out the purpose of its organization, and it maintained certain business institutions, its clubhouses, and its home for aged and invalid members. The name it had acquired and appropriated had become very valuable, in the nature of a trade-name, by which it was accustomed to appeal to the public, and on the faith and reputation of which it was accustomed to obtain and receive from the public large sums of money. The name of the defendant is so similar that in the nature of things it will cause the one order to be mistaken for the other, and the enterprises of each to be confused with those of the other. The fact that the defendant's membership is composed of colored people will not materially change the result. In addition to the close similarity in the names, if a badge the same in appearance as that of complainant be worn by one of defendant's members, the inference is bound to be immediate

in the public mind that the membership is the same. Few will take the trouble to inquire, or have the means of inquiring, whether such person is a member of complainant organization or of a different organization. This confusion of the two orders will, as shown in the record, result in great financial detriment to the complainant. The complainant first used the name, and gave to it the great financial, business, and social value which is now attached to it, to say nothing of the fact that complainant is a prior corporation, which is entitled to have its corporate name protected. Under the facts stated, we think the complainants were entitled to the relief sought in the bill. *Ladies' Good Samaritan Society of Nashville* v. *Nashville Ladies' Good Samaritan Society,* 1 Tenn. Ch., 97; *International Committee of Young Women's Christian Association* v. *Young Women's Christian Association of Chicago,* 194 Ill., 194, 62 N. E., 551, 56 L. R. A., 888; *Rickard* v. *Caton College Co.,* 88 Minn., 242, 92 N. W., 958; *Merchants' Detective Ass'n* v. *Detective Agency,* 25 Ill. App., 250; *Nokes v. Mueller,* 72 Ill. App., 431; *International Soc.* v. *International Soc.* (Sup.), 59 N. Y. Supp., 785; *Woodward* v. *Lazar,* 21 Cal., 449, 82 Am. Dec., 751; *Marsh* v. *Billings,* 7 Cush. (Mass.), 322, 54 Am. Dec., 723; *Devlin* v. *Devlin,* 69 N. Y., 212, 25 Am. Rep., 173; *Hopkins Amusement Co.* v. *Frohman,* 103 Ill. App., 613, Id., 202 Ill., 541, 67 N. E., 391; *Gamble* v. *Stephenson,* 10 Mo. App., 581; *Red Polled Cattle Club of America* v. *Red Polled Cattle Club,* 108 Iowa, 105, 78 N. W., 803;

Elks v. Elks.

*Atlas Assurance Co., Limited,* v. *Atlas Assurance Co.* (Iowa), 112 N. W., 232, 15 L. R. A. (N. S.), 625.

The application for *certiorari* will therefore be refused.