THE RED POLLED CATTLE CLUB OF AMERICA V. THE RED POLLED CATTLE CLUB OF AMERICA *et al.,* Appellants.

**Corporate Name: RIGHT TO USE.** In 1883 certain cattle breeders organized the Red Polled Cattle Club of America, and in 1887 published a herd book which was prepared by one M. as secretary, and copyrighted by him. In 1888 the society incorporated in Illinois under the same name. In 1895 defendant incorporated in Iowa, M. being a member thereof as well as a member of the corporation in Illinois. In 1890, the Illinois corporation published its first volume of a herd book. M. assigned volumes 1 and 2 of the herd book to the Iowa corporation. *Held,* that the Iowa corporation had no right to take and use a name similar to that already in existence, where it was calculated to deceive the public dealing with it.

INJUNCTION. A corporation may protect its corporate name by enjoining another corporation subsequently organized from using the same name in a way to injure the business of the former corporation, where the use of the same name by both corporations is calculated to deceive the public and to injure the former's business, although the latter was not guilty of actual fraud in adopting the same name.

UNINCORPORATED SOCIETIES. *Change to corporations.* A corporation organized under the name by which a former voluntary club was ..

3. known, upon the unaminous vote of all the members of such club voting upon the question, although some of them did not vote, succeeds to any right the club may have had to the use of such name.

Interrogatories: PRACTICE. Defendant is properly refused permission to propound interrogatories to the plaintiff where the answer to which they are attached is not filed until too late to obtain the answers before the time set for trial and many of the interrogatories are so unimportant that answers to them should not be required.

*Appeal from Jackson District Court.*—HON. C. M. WATERMAN, Judge.

FRIDAY, APRIL 7, 1899.

THE following are facts conceded or found in this case: That the plaintiff is a corporation organized under the laws of the state of Illinois, and the defendant is a corporation organized under the laws of Iowa; that in 1883 various breeders of red polled cattle formed or acted together as a society or club in the interest of that breed of cattle, and called themselves the Red Polled Cattle Club of America, the society being unincorporated; that there was no such thing as stock, or any different interest than that of each alike paying an equal amount,—five dollars,—based on the idea of meeting expenses; that on November 20, 1893, some fifteen of these breeders met in Chicago, informally organized the so-called Red Polled Cattle Club of America, appointed committees to report a standard for this breed of cattle in America and to report a constitution and by-laws, and at the same meeting adopted reports from these committees so doing, and elected officers; that by 1889, when the regular organization published its second volume of the herd book, there were some seventy-five members acting with it; that at the second annual meeting, in November, 1884, it was decided to publish a herd book, and the labor of publishing it was intrusted to L. F. Ross, who was elected president, and J. C. Murray, who was elected secretary, and which was done entirely by Murray; that in 1887 volume 1 of the American Red Polled Herd

Book was published by J. C. Murray, and copyrighted by him, which contained, in addition to the register of cattle, the information usual in a first volume of such a book, that in 1888 the unincorporated society did incorporate in the state of Illinois under the name of the Red Polled Cattle Club of America; that in 1895 the defendant became incorporated under the laws of Iowa, the defendant Murray being a member thereof, he having also been a member of the unincorporated society in Illinois, and, as we find, a member of the corporation in that state; that in 1890 the plaintiff corporation published its first volume of a herd book, and has since continued its publication; that the plaintiff corporation succeeded to the rights and benefits of the unincorporated society from which it was organized; that defendant Murray, in editing and publishing two volumes of the herd book while a member of the unincorporated society, did so as its secretary and editor; that, while he copyrighted said books in his own name, he had no right thereto; that the defendant corporation took the identical name of the plaintiff corporation, and is pursuing the same aims and purposes, and it is charged by plaintiff that it is with a purpose to defraud and injure it in its business; that the defendant Murray, for the purpose of injuring plaintiff, has made a pretended assignment of volumes 1 and 2 of herd book to the defendant corporation, and relief by way of injunction, and otherwise, is asked. Upon the issues joined, a trial was had in the district court, that gave judgment for plaintiff, from which the defendants appealed.—*Affirmed.*

*Hayes & Schuyler* for appellants.

*Davison & Lane* and *Preston & Moffit* for appellee.

GRANGER, J.—I. Annexed to the answers were filed 67 interrogatories to be answered by the plaintiff. To the interrogatories from 1 to 64, the plaintiff filed exceptions and objections, and a ground thereof was that the questions were

frivolous, unimportant, and incompetent to elicit material evidence; and by the exceptions it was further made to appear that some of the officers and members of the plaintiff corporation, having knowledge of the facts, resided in Michigan, Ohio, and Wisconsin, and that it would be impracticable to obtain full and explicit answers to the interrogations that were material, prior to the trial of the cause, when such officers and members as had such knowledge would be present, and could be used on the trial to show the facts. The answer to which the interrogatories were attached was filed April 24, 1896, and it appears from the record that the cause was submitted to the court on the thirtieth of the same month. The interrogatories must have been filed when the case was expected to proceed to trial, and when, if it did so proceed, the answers could not be made before trial. It is true that many of the interrogatories are unimportant, and answers to them should not have been required. Under the holding of *Hogaboom v. Price,* 53 Iowa, 703, the ruling was right on this particular ground. We may refer in this connection to a complaint based on a refusal by the court to strike certain averments from the reply. Whatever may be said as to the technical correctness of such averments in the reply, the issues were in no way changed because of them, as the same facts had before been pleaded and become material under issues otherwise joined.

II.    The legal contention is over the right of the defendant corporation to use the name "Red Polled Cattle Club of America." That it has such a right, if in the exercise of it there is not an infringement of the rights of plaintiff, no one doubts. Much importance seems to be attached to the legal status of the unincorporated society known as Red Polled Cattle Club of America—to whose rights and interests, under our findings, the plaintiff corporation succeeded—both before and after the plaintiff became incorporated. By noting some facts, confusion may be avoided, because, as to the facts, there is some dispute. The

voluntary association, prior to November, 1888, when plaintiff incorporated, was made up of a membership with chosen officers, and one purpose of the society was collecting material for, and publishing, a herd book in the interest of its membership. In all respects it was purely voluntary, and it does not appear that it was for pecuniary profit. It was so organized that its officers were chosen and its business was directed by the society, and J. C. Murray, a defendant in this suit, was its secretary and treasurer, and as its secretary, and by its direction, he edited and published two volumes of the herd book. As to the particulars of their publication there is some dispute, it being appellants' theory that Murray did it at his own expense, and that the publication copyrighted in his name was his. Our finding is that at the meeting of the club in November, 1888, when the club, by what we call "unanimous consent," decided to incorporate, Murray was not the owner of the book, any more than any other member of the club was, and that the incorporation of the plaintiff dissolved the prior organization because of the unanimous assent thereto, expressly or tacitly given, and the purpose to make the incorporation of plaintiff succeed to all its rights and properties. Because of the individual assent to this result, we think all questions of what might have been individual rights of members of the club when unincorporated, or what was its legal status, is not involved here. The voluntary society club, with no vote against it, adopted a resolution to incorporate. While all did not vote for it, none voted against it, and, in pursuance of the adoption of the resolution, its purpose was carried out by an incorporation without objection and with the full purpose clearly known. It is because of these facts that we say the incorporation was formed by the unanimous assent of the membership of the voluntary society. It is not important to consider the right of the voluntary society to the name it bore, from a legal point of view. In the change of its organization from that of a voluntary to an incorporated club, the name was lost to

the former and adopted by the latter, and exclusively used by it till 1895, when the defendant corporation came into existence.

This leaves but the question of the right of the defendant to adopt and use the name owned and used by the plaintiff. The district court prepared and filed a statement of its views on the different questions involved, in harmony with what we have said, and, as we concur with that court on the remaining question, we may well adopt the views expressed by it, as follows:

"(3)   What right has plaintiff to restrain or restrict defendants in the use of said name? The defendants, having legally incorporated in Iowa, certainly have a right to their corporate name, except in so far as they may injure plaintiff by so doing. Whether the name in question is of a character to properly constitute a trade-mark or trade-name, I need not consider. When defendant chose it, they did so with full knowledge of the fact that plaintiff had already adopted it and was doing business under it. That the name is of a pecuniary value is sufficiently shown by the facts that defendants selected it, though free to take any name they chose, and now make such strenuous efforts to continue its use. Conceding, for argument's sake, that the corporated name of plaintiff is not a lawful trade-mark, yet, if defendants adopted it with intent to take business from plaintiff, and thus do it injury,—and which I find to be the fact in this case,—the law will interfere to prevent the accomplishment of any such purpose. The rule seems to be this: Irrespective of any question of trade-marks, manufacturers have no right by imitative devices, to beguile the public into buying their wares, under the impression that they are buying those of their rivals, nor has a corporation a right to take and use a name so similar to that of another already in existence as to be calculated to deceive the public dealing with it. From among the numerous cases on the subject, I select the following: *Coats v. Thread Co.,* 149 U. S. 562 (13 Sup. Ct. Rep.

966); *McLean v. Fleming,* 96 U. S. 245; *Holmes, Booth &
Haydens v. Holmes, Booth & Atwood Mfg. Co.,* 37 Conn.
278; *Thread Co. v. Armitage,* 67 Fed. Rep. 896; *Higgins
Co. v. Higgins Soap Co.,* 144 N. Y. 462 (39 N. E. Rep.
490); *Croft v. Day,* 7 Beav. 84. In *Holmes, Booth & Haydens
v. Holmes, Booth & Atwood Mfg. Co., supra,* it is said, in
substance: Actual fraud need not be shown. It is enough if
the name of the alleged infringer is calculated to deceive. In
the case at bar, names are identical. It is true the plaintiff
company has for some time past used the word 'incorporated'
in connection with its name; but this word is no part of its
legal title, and, if it was, while its use might destroy the
identity of the two names, it would not deprive them of their
deceptive similarity. It is a descriptive word only, and is
equally so to both organizations. Outside of these considera-
tions, however, defendants are in no position to insist that
plaintiff company must distinguish itself from the corpora-
tion they have formed.

If possible, as I have already said, for the Iowa corpo-
ration to use its name in any way not injurious to the business
of plaintiff, it is entitled to do so, but, inasmuch as the names
are exactly the same, it seems obvious that such use
can be made only in matters purely formal. Plaintiff
is entitled to relief by injunction. The judgment
should be broad enough to be protective. An entry may be
drawn prohibiting the defendants, their servants, etc., from
publishing or issuing any herd book under the name, or pur-
porting to be published by the authority of the Red Polled
Cattle Club of America, or from representing or holding
said corporation out to the public as the Red Polled Cattle
Club of America.

See, also, as sustaining these conclusions, *Lodge v. Gra-
ham,* 96 Iowa, 592.

III. It is said the plaintiff is not entitled to equitable
relief because of its laches, because the separation was in
1888, and defendants have continued business right along

and were not disturbed until 1895. The facts are not quite in harmony with the statement. It is true that Murray, and perhaps others with him, not as a corporation, had been pursuing the business; but the incorporation came in 1895, and a principal fact of contention is the right to own and publish the herd book, the third volume of which, as edited by Murray, is now in process of publication, to prevent which this suit is in part instituted. The judgment is AFFIRMED.

WATERMAN, J., takes no part.