STIRLING SILK MANUFACTURING COMPANY

*v.*

STERLING SILK COMPANY et al.

[Filed May 2d, 1900.]

1. The marking or weaving of the complainant's name on the selvedge or margin of silk manufactured by it is nothing more than a method of marking the manufacturer's name on his goods, and cannot be protected as a patented

process or trade-mark, though complainant first introduced the method in this country.

2. Where complainant advertised that its method of marking its name on the selvedge of silk was patented, and no patent-right existed, such action was ground for refusing complainant a preliminary injunction against one alleged to be infringing complainant's name and method of use, where it did not appear that the necessity for such interference was absolutely imperative.

3. Practice as to preliminary injunctions in trade-mark cases discussed.

On application for preliminary injunction. Heard on bill and affidavits, and answer and affidavits.

*Mr. Joseph D. Bedle* and *Mr. J. Flavel McGee*, for the complainant.

*Mr. Eugene Stevenson*, for the defendants.

EMERY, V. C.

This is an application for a preliminary injunction against the use of complainant's name and trade-mark. Without prejudging in any way the decision which should be made at final hearing, on the complainant's rights, as set up in the bill, and on the argument, it is proper and necessary in applications for preliminary injunctions in these cases to consider to some extent the *status* of the complainant's claim, on the disputed questions of law and fact which are raised on the pleadings and affidavits, for the reason that in trade-mark and similar cases, clearness or doubt as to complainant's title is one of the elements which specially affects the right to a preliminary injunction.

After considering and weighing, as fully as I had opportunity, the very full and thorough arguments and briefs of counsel, my present view as to the situation of complainant's claim is this:

*First.* That the claim set up in its bill, of an exclusive right, as against the defendants and all others, to a label or distinguishing mark, consisting of the weaving of a name upon the selvedge or margin of "Black Taffeta" or other silks, is not well founded. This, as it now strikes me, is nothing more than a method of marking complainant's name on its goods, and as such method it cannot be protected, either as a patented process

or as a trade-mark. This method of marking his own name upon every yard or smaller parcel of the goods is open to every manufacturer or dealer in the goods for a similar purpose. It is exceedingly useful and valuable for the purpose of enabling the manufacturer or dealer in silks to appeal directly to the purchaser of every yard of his goods, and establishing with purchasers a reputation for his goods that will increase the sale. To give complainant the exclusive benefit of this method under cover of the right to a trade-mark (which has no limited existence) would, as it now seems to me, create a privilege or monopoly in trade of an entirely new character, and the claim that it first introduced the method in this country does not give complainant any monopoly or exclusive right to its use. No case has been cited to support any such claim, and no preliminary injunction could go on the basis of this claim.

*Second.* I think the corporate name of the defendant, "The Sterling Silk Company," is so similar to that of the complainant, "The Stirling Silk Manufacturing Company," that with purchasers at retail of the goods there is danger of confusing complainant's goods with defendants'. Such purchasers are the persons principally to be considered in reference to the trade in these selvedge-marked goods, rather than the jobbers or persons in the trade, for, as above stated, this method of marking on the selvedge the name of the maker or dealer and his guarantee is adopted for its effect in increasing the sales to the ultimate purchasers by a direct and permanent appeal to them. With reference to ordinary purchasers at retail, the distinctions drawn by counsel between the names are, as it now strikes me, too slight to be considered substantial. The two names, " Sterling " and "Stirling," are not only *eadem sonantia*, but the difference in mere spelling is one of such a character that ordinary purchasers would not be likely to recollect from one day of purchase to another, whether the name of the manufacturer was spelled with an " e " or an " i," and on seeing the name spelled with a different letter from the one expected, would be likely to consider themselves mistaken as to the spelling, if the matter was at all called to mind. I doubt whether either counsel in this

case, or the court, independent of the special reasons for recollecting the distinction set out in the answer, would themselves carry in mind for any length of time the distinction between "Sterling" and "Stirling" as the names of the respective parties in the cause.

The difference occurring in defendants' name by the omission of the word "manufacturing" might perhaps tend to distinguish, except for the fact that both companies are silk *manufacturing* companies, and nothing but *manufacturing* companies. The addition, therefore, has no effect by way of describing the character of business, and for the purpose of distinguishing the parties to either dealers or purchasers at retail, the addition is ineffectual. So far as relates to the question of the infringement and use of name therefor, my present view is that the complainant has at least a *prima facie* case for relief. Up to the present time, or rather up to the time when the question in relation to the name appears to have been first raised by this method of bringing the name directly to the attention of the customers, and so long as the dealings of the parties in their goods were altogether or mainly with respect to the trade dealers, the similarity of names seems to have been of little practical inconvenience. This seems to have been due mainly to the method adopted by the defendants of advertising and carrying on the business with the trade by using the names "Valentine & Bentley" in connection, more or less prominent, with the name "Sterling Silk Company" on its advertisements, signs, &c. But with the defendant company's adoption of the method of increasing its retail sales by weaving its name and guarantee on the goods, this distinctive feature of the use of the names of Valentine & Bentley has been discontinued, and it has been discontinued just when, under the special circumstances, the need for distinction was most urgent, if defendants really desire to continue the distinction. My present view, therefore, is that under these circumstances, admitted by the answer and affidavits, as to the pains defendants have for years taken, and apparently with success, to distinguish the companies and their products, the complainant has the right, even after the lapse of several

years, to call in question the propriety of the use of the similar name, now that it is used in a manner calculated to mislead the ordinary purchaser, and used under a claim of right.

As to the differences in the manner of marking the names on the selvedge, the difference in spacing and the greater number of words to the yard, and the addition of the word "wear" to "guaranteed"—these, as it now strikes me, are matters of detail which might possibly distinguish them to a dealer in the trade, but would not be fixed in the attention of the purchaser, to whom the ideas in mind would be the ideas manifestly intended to be conveyed by both parties of a guaranteed silk taffeta, manufactured by the "Sterling," or "Stirling," Silk Company. I consider, therefore, that the complainant, so far as its rights depend on the use of the name, has established a *prima facie* case for protection against the use of the name in the manner complained of, and the question is, is it entitled to injunction pending the final hearing? Interlocutory injunctions in trade-mark cases which seek to restrain, pending hearing, the carrying on of business to a certain extent or in a certain way, against defendants' *bona fide* claim of the right so to carry it on, involve not only the question of the protection of a probable right but also other considerations, which are specially applicable in these cases. One is promptness of application for the preliminary injunction, and in view of its interference with trade the rule against delays is specially strict. *26 Am. & Eng. Encycl. L. 504* and cases cited. In this case complainant introduced its method into the market in January, 1899. In June, 1899, as the bill states, defendants commenced the infringement of the method and name. In October, 1899, complainant, as appears by the affidavit of Phillips, advertised that it was the original maker and owned the patent-right to mark "guaranteed" on the selvedge of silks. On February 13th, 1900, it procured evidence by affidavit of a purchaser of the defendants' use of the name in the manner complained of. The bill was filed March 27th, 1900. This delay from either June or October, 1899, is fatal to a preliminary injunction unless (1) the nature of the infringement of the name is such that the com-

plainant's rights pending hearing cannot be otherwise pro-tected, and unless (2) the balance of inconvenience resulting from restraining defendants pending trial if defendants are ultimately successful, is so much less than that of now refusing to restrain defendants pending trial if complainant is successful, that the objection of delay is overcome. This principle of balancing the inconvenience to the parties in granting preliminary injunction is recognized as specially applicable in infringement cases. *Read* v. *Richardson, 45 L. T. (N. S.) 54,* cited in *26 Am. & Eng. Encycl. L. 501; Kerr Inj. \*26, \*27.* In the present case the application of this rule favors defendants. The practice of marking is not likely to be a temporary method or fashion, but, in the language of one of the witnesses, "it has come to stay," as a most useful method of directly influencing purchases from reliable and honest manufacturers and dealers in silk. The goods are staple goods, and there is no necessity, therefore, of immediate protection of the trade of a passing season or fashion. Defendants cannot, as I now view their rights, be restrained from weaving the names of others on their silks, but only from the use of their own name as heretofore used, and this constitutes only one-sixth of their entire manufacture of the goods. Defendants appear to be entirely responsible and able to respond to a decree for an accounting for profits on the sale pending suit, of goods unlawfully marked, if complainant be held entitled to a decree.

The only serious question as to damage pending hearing, in my mind, arises from the fact that the defendants' goods are alleged to be of a cheaper and inferior grade, and the sale pending suit may, therefore, as is claimed, injure complainant's reputation for silks. But defendants' affidavits on this point, while they do not deny that their silk is cheaper and lighter, show that the quality is good and the wear guaranteed. The main difference, if this be true, is in the weight and price of the respective silks, and as it is probable that all silk manufacturers put on the market silks which differ in price because of the weight, I do not think that this difference requires protection by injunction pending suit. An accounting for profits, which

may have been made pending the action, if complainant eventually secures it, would probably fully indemnify complainant for any possible losses by reason of the sale of a different weight of silk, if the quality is good, as I must, on defendants' affidavits, take it to be. But in order that complainant's right on the account for profits pending suit may not be prejudiced by the withholding of the injunction, the defendants, as a condition of such withholding, must stipulate to keep an account pending suit of the goods manufactured and sold with its name stamped. This is a common condition in these cases. *Kerr Inj.* *27. Another reason not pressed by counsel weighs with me against granting a preliminary injunction in this case, and should be called to counsel's attention now. Complainant, in October, 1899, advertised that its method of marking on the selvedge of silks was patented, and that its right to so mark was exclusive, and not only a legal but a moral right. It does not appear that the advertisement or claim has been withdrawn. No such patent-right existed, nor, if my views above expressed be correct, can any patented-right exist, and the representation that the marking of guaranteed was patented, was therefore false. It was moreover a falsehood publicly made by advertisements for the apparent purpose of influencing dealers who were adopting the method of having their names woven on the goods by manufacturers, to deal with complainant only, under penalty of infringement of patent, and it may possibly have had this effect. If this false statement that the mark " guaranteed " was patented had appeared in connection with the trade-mark or name itself on the goods, there could be no question, I think, that the complainant could have had no relief, even on final hearing, for the protection by injunction is not given in favor of falsehood. *Kerr Inj.* *412 and cases cited. The serious question is whether a false statement that the mark was " patented " made, not in the trade-mark itself, but by way of collateral misrepresentation, as by advertisements, &c., is a bar to relief. Upon this point judges differ. The leading case is *Ford* v. *Foster, L. R. 7 Ch. App. Cas. 611.* In this case Vice-Chancellor Bacon held that the representation in invoices and advertisements that a shirt called " Ford's Eureka Shirt " was patented, when it was not, deprived

complainant of right to relief on final hearing. He says (at *p. 619*) that he is not disposed to fritter away the wholesome doctrine of the court, that if a man invokes its aid for the protection of a legal right, he is bound to show that he dealt honestly with that right, and that there was no honesty in complainant's holding himself out as being patentee when he had no such right. On appeal, all of the justices admitted the correctness of the principle of the effect of misrepresentation in the trade-mark itself, but held that collateral misrepresentations that the article was patented were not fatal to protection on final hearing, if the misrepresentations would not have been a defence to an action at law for violating the trade-mark, or sufficient basis for enjoining a suit at law. These rules were made the test of whether a court of equity was bound to aid by injunction in the protection of the legal rights. (*Lord-Justice Mellish,* at *pp. 632, 633.*) This case was cited in a late case in the house of lords (*Cochrane* v. *MacNish, 1896, App. Cas. 225, 226*), and the question started but it was not directly passed on. My present view is that there is much to be said in favor of the rule as stated by Vice-Chancellor Bacon, especially in view of the fact that in many cases our courts of equity have adopted a rule in relation to the protection of legal rights, different from that laid down by the justices on appeal in *Ford* v. *Foster.* Our courts hold in many cases that complainant must come into a court of equity with a cause essentially equitable. *Minzesheimer* v. *Doolittle, 45 Atl. Rep. 611,* and cases cited at *p. 612* (*Errors and Appeals, March, 1900*). This rule, if applicable to the present case, and in the absence of a satisfactory explanation of the representation or of its continuance, might prevent complainant obtaining a final decree. The doubt or question as to the legal effect of the misrepresentation upon the right to a decree at final hearing is therefore an additional ground for refusing to interfere by preliminary injunction, where the necessity for such interference is not absolutely imperative, in order to protect complainant, if ultimately successful.

The preliminary injunction is therefore denied. Costs on the application will be costs in the cause.