### FULLER v. HUFF et al.

#### (Circuit Court of Appeals, Second Circuit. July 5, 1900.)

#### No. 157.

1. TRADE-NAMES—DESCRIPTIVE TERMS—PROTECTION AGAINST UNFAIR COMPETITION.

The long-continued exclusive use of· a trade-name, although primarily intended to be descriptive of the quality of a product, entitles the user to protection against its unnecessary adoption and use by another which is calculated to deceive purchasers; the use having been retained for that purpose.

2. SAME.

The complainant had for 18 years made and sold food products under the name "Health Food Company," which had during such time become widely known and identified with his products, when another manufacturer of similar products adopted the name "Sanitarium Health Food Company." *Held*, that although the use of the latter was accompanied by no simulation of packages, and the place of manufacture shown thereon was different, it was calculated to deceive purchasers and constituted unfair competition, there being no necessity for its adoption.[1]

3. SAME—SUIT FOR INJUNCTION—PROOF OF ACTUAL DECEPTION.

Where the simulation of a complainant's trade-name by defendant is manifestly liable to deceive, it is not necessary for complainant to show that purchasers have actually been deceived, to entitle him to relief.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Charles G. Coe, for appellant.

Thomas B. Kerr, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

SHIPMAN, Circuit Judge. The complainant, Frank Fuller, a citizen of New Jersey, commenced in the year 1875, under the name of "Health Food Company," to sell in the city of New York cereal products prepared for food, and has continued to the present time in that business and in the use of the same name, under which he has extensively advertised his goods by circulars, and in newspapers and magazines, at a cost of from $75,000 to $100,000. He has established agencies in Brooklyn, Chicago, Boston, Washington, Philadelphia, St. Louis, and Oakland. The name "Health Food Company" is displayed prominently upon the packages in which the various articles are presented to the consumers. About 50 different articles have been thus placed upon the market. The business has become large, and the name is unquestionably valuable to the complainant. In October, 1876, John H. Kellogg took charge, and has continued to be in charge, of the institution popularly known as the "Battle Creek Sanitarium," but incorporated in pursuance of the laws of the state of Michigan, in 1867, under the name of the "Health Reform Institute." This corporation is the owner of a large sanitarium, having branch institutions at various places, and has established in this country and elsewhere suborganizations for the promotion of charitable and missionary work. The Battle Creek Sanitarium recommended to its patients particular kinds of cereal foods, and entered upon the business of manufacturing and selling these articles under the name of "Sanitarium Foods." In 1881 19 different articles were made. In 1888 the business of food manufacture was made a separate department, under the name of "Sanitarium Food Company," which advertised itself in April, 1893, as "Sanitarium Health Food Company." The reason for this, and a subsequent change of name, which preserved the words "Health Food Company," is stated by Kellogg in his deposition as follows:

"In April, 1893, our advertisement appears in Good Health, over the business name of 'Sanitarium Health Food Company.' This name we were led to adopt by the action of one of our old employés, who, leaving the institution, set up in business in the same town, advertising himself under the name of the 'Battle Creek Health Food Company.' As quite a large proportion of our mail had for years been addressed to us as the 'Battle Creek Health Food Company,' we found this action a serious annoyance, and objected to it, with the result that an arbitration was agreed upon, the result of which was that the party referred to was required to change his name, which he did, adopting the title the 'Battle Creek Bakery Company.' We then added the word 'Health' to our business announcement, making it 'Sanitarium Health Food Company.' Our salesmen, however, in introducing our foods, so constantly made use of the term 'Battle Creek Sanitarium' in describing our foods, to distinguish between our institution and numerous other sanitariums, we finally, some two or more years ago, still further extended the business title of our food department to its present form,—the 'Battle Creek Sanitarium Health Food Company.' Our purpose in adopting the words 'Health Food' in our name was to protect ourselves against parties who sought to pirate the extensive business which we had built up, by assuming a name similar to ours, and making similar goods in the same town."

Their packages and cartons have the name "Health Food Co." in conspicuous type, prefixed by the word "Sanitarium," and in smaller type the words "Battle Creek, Michigan," under the name. The pack-

ages do not imitate or resemble in external appearance the dress of the packages of the complainant.

In October, 1896, a retail grocers' food exhibition was held at the Grand Central Palace in New York City. The complainant exhibited his products at a booth, under the prominently displayed name, "Health Food Company." About 15 or 20 feet distant the defendant Barton Huff, a citizen of the state of New York, as agent of the Health Reform Institute, exhibited its wares, and upon its booth was a placard containing the words "Health Food Company," in large letters, under the words "Battle Creek Sanitarium." The complainant remonstrated with Huff against the use of "Health Food Company" as an infringement of the complainant's right, and threatened a suit. Huff said that he would bring the representation to the attention of the officers of the Health Food Department, but the use of the name did not cease. The food business of the defendant under its last name is extensively advertised, and, when the testimony was being taken, was said to amount to from $260,000 to $300,000 annually. The circuit court dismissed the bill upon the ground that the defendant's name was clearly distinguishable from the complainant's business name, and was not an unlawful appropriation. 99 Fed. 439.

The term "Health Food" means healthy food, or health-producing food, and is therefore descriptive of quality, and cannot be a technical trade-mark, either with or without the word "Company," any more than the words "Nutritious Wine" could be a valid trade-mark. If a case against the defendant exists, it is one of unfair competition; and the law upon the subject of the adoption by a competitor of names or words descriptive of quality, which have previously become trade-names, and which adoption will constitute unfair competition, is correctly stated by the counsel for the defendant as follows:

"When such a mark, name, or phrase has been so used by a person in connection with his business or articles of merchandise as to become identified therewith, and indicate to the public that such articles emanate from him, the law will prohibit others from so using it as to lead purchasers to believe that the articles they sell are his, or as to obtain the benefit of the market he has built up thereunder."

The same statement of the law is contained in the case of Reddaway v. Banham, App. Cas. 199, decided by the house of lords in 1896, in which it was held that "one person was not entitled to pass off his goods as those of another by selling them under a name likely to deceive purchasers, whether immediate or ultimate, into the belief that they were buying the goods of the former, although the name was, in its primary sense, merely a true description of the goods." The subject of the unlawful use by competitors of the name under which a rival has previously presented himself to the public and has gained a business reputation, although the name is not strictly a trade-mark, and is either geographical or descriptive of quality, has been frequently of late before the courts, which have demanded a high order of commercial integrity, and have frowned upon all filching attempts to obtain the reputation of another. Lee v. Haley, 5 Ch. App. 155; North Cheshire & M. Brewery Co. v. Manchester Brewery Co. [1899]

App. Cas. 83; City of Carlsbad v. Kutnow, 18 C. C. A. 24, 71 Fed. 167; American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 53 N. E. 141, 43 L. R. A. 826; Block v. Distributing Co. (C. C.) 95 Fed. 978.

The question, therefore, is, is the real defendant's use (for it is manifest that the Michigan corporation is the real defendant) of the words "Health Food Company," in connection with the words used as a prefix and suffix, such a use as is likely to deceive consumers into the belief that they were buying the complainant's goods? It is to be observed that the frequent insignia of an intent to deceive, viz. the copy or the imitation, more or less close, of the dress of the competitor's packages, are absent in this case; but if a trade-name has been so identified with the business of a manufacturer as to inform the public that the name upon goods means that they are the product of that person, and another subsequently adopts and displays the name, it is not material that he has not also adopted the particular dress in which his predecessor has presented his goods. Hier v. Abrahams, 82 N. Y. 519. The complainant had used the name for 18 years before the defendant assumed it, had acquired an extensive business under it, and had established agencies for his goods in six or seven Eastern and Western cities, while all that the consumer knew of the complainant's goods was that they were presented to him as the products of the Health Food Company. The defendant announced its goods in 1881 as "Sanitarium Foods," advertised them also as "Invalid Foods," and waited until 1893 before they were presented as the products of the Sanitarium Health Food Company. The reason for the adoption of this name was a desire to forestall its use by any one else, thus recognizing the benefit from the name and the advantage from priority in its use. Three years after, it knew that it had long been prominently used by, and was the sole business name of, the complainant. The defendant now so coveted the name as to determine not to relinquish it, and continued its use despite remonstrance. The benefit to the corporation was derived from the familiarity with the name on the part of that portion of the public which used this class of goods. It is said, however (and the circuit court yielded to the defense) that the name is presented to the public with such accompanying assertions in regard to the manufacturer of the goods and the place of the manufacture that the consumer need not be deceived. In the class of cases in which a manufacturer is using his own name, or the name of another person which has become generic, this defense is of great value, because it is the duty of the user to make any inevitable harm as light as possible. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. The question in this case is, however, whether the simple use of the name, although with prefixes or suffixes, is not "likely to deceive purchasers." The history is significant in regard both to the motive of the Michigan corporation in retaining its occupancy of the name and the probable effect of a permanent retention. After it had presented its goods to the public for years under the name "Sanitarium Foods" and "Invalid Foods," there was no necessity for an abandon-

ment of the former names, under which it had confessedly obtained success, and by which it was well and favorably known by its customers. The adherence to the new name to the extent of guarantying productions to its purchasers against suits indicates the pecuniary benefit which was expected to ensue from the adoption of a name to which consumers had long been accustomed, and the persistence in the use also indicates the pecuniary injury which was liable to come upon the complainant. The case is not one where the Michigan corporation must use to a certain extent the name of the complainant, and it is not, therefore, one of damnum absque injuria. It is the case of an unnecessary use of a name long previously used by another in the same business, and in the recent decisions, by courts of last resort, upon the right to the use of trade-names, although geographical or descriptive in their primary meaning, great importance is given to mere long-continued and exclusive priority of use. North Cheshire & M. Brewery Co. v. Manchester Brewery Co., supra; American Waltham Watch Co. v. United States Watch Co., supra. It was not necessary for the complainant to attempt to discover whether a purchaser had been actually deceived, for a manifest liability to deception exists. Taendsticksfabriks Akticbolagat Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904; Manufacturing Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993; Biscuit Co. v. Baker (C. C.) 95 Fed. 135. Although the intent of the defendant's principal when it commenced to use the name "Health Food" may have been innocent, the continuance, after it had learned of the complainant's prior use, indicates its deliberate intention to use the name without reference to the complainant's possible prior rights. Orr v. Johnston, 13 Ch. Div. 434. The decree of the circuit court is reversed, with costs, and the cause is remanded to that court with instructions to enter a decree for injunction against the defendant Barton Huff in accordance with the prayer of the bill, with costs.