HANS E. NESNE and Another v. JOHN O. SUNDET and Others.[1]

November 18, 1904.

Nos. 13,955—(6).

**Use of Trade-Mark.**

A corporation may be enjoined from using a trade-name lawfully adopted prior thereto by a copartnership engaged in a like business at the same place.

**Intent of User.**

The fact that such name was assumed in good faith, and without design to mislead the public and acquire the trade of a rival, is not material. The probable and ordinary consequences of the act, as distinguished from the intent or motive of the parties, must constitute the test.

Action in the district court for Polk county by Hans E. Nesne and Charles N. Bourdon, copartners as Crookston Marble Works, to restrain defendants, John O. Sundet and others, and Crookston Marble Works, a corporation, from using the name of the corporation in conducting their business. The case was tried before Watts, J., who found in favor of defendants. From a judgment entered pursuant to the findings, plaintiffs appealed. Reversed.

*Martin O'Brien, H. Steenerson,* and *Charles Loring,* for appellants.
*R. J. Montague* and *Albert Chilgren,* for respondents.

DOUGLAS, J.

Appeal by plaintiffs from a judgment of the district court in favor of defendants.

In June, 1901, plaintiffs entered into a copartnership at Crookston, Minnesota, under the firm name of Crookston Marble & Granite Works,

[1] Reported in 101 N. W. 490.

and engaged in the general business of manufacturing and selling cemetery monuments. Two weeks later they changed their name to the Crookston Marble Works, and have since conducted business thereunder. For nine years prior thereto some of the defendants had conducted a like business at Crookston as copartners under the firm name of Northwestern Marble Works. They used the words "Marble Works" as a sign over the door of their place of business, and it appears that during part of said time approximately ten per cent. of the letters received by them were addressed, "Crookston Marble Works," but that such correspondence is decreasing. In July, 1902, said defendants associated themselves together as a corporation under and pursuant to the laws of this state, adopted "Crookston Marble Works" as a corporate name, and thereafter continued in business thereunder. It therefore appears such parties are engaged in the same business in the same territory, much of which is carried on by correspondence, and are using identical names. This has heretofore led to, and of necessity in the future will result in, endless confusion.

It is well settled, where a trade-name is appropriated by another with a fraudulent intent to compete unfairly in a special line of business with parties who had theretofore adopted it and acquired a proprietary interest therein, that injunction will lie. Merchants v. Detective, 25 Ill. App. 250; Pierce v. Guittard, 68 Cal. 68, 8 Pac. 645; Keller v. Goodrich, 117 Ind. 556, 19 N. E. 196; Plant v. Michel, 23 Mo. App. 579; Avery v. Meikle, 81 Ky. 92; McLean v. Fleming, 96 U. S. 254; Hiram Walker & Sons v. Mikolas (C. C.) 79 Fed. 955; Van Horn v. Coogan, 52 N. J. Eq. 380, 28 Atl. 788.

In Rickard v. Caton College Co., 88 Minn. 242, 92 N. W. 958, this principle was adopted. In that case the Caton College Company, in its advertisement and by its advertising signs, appropriated the name of "Minnesota College of Business," which had long been used by a rival, and placed the same in large letters following the words "Caton College" in small type. It was strenuously urged that "Minnesota" was a geographical word of a descriptive character, that the word "School" was used to describe the nature of the institution, and that neither of the terms could be made the subject of a strict property right. This was conceded, but the court enjoined the use of the term

"Minnesota School of Business," because of the manner in which the words were associated and used. It was held that the use of the name was clearly calculated to deceive the public, and trespassed upon the rights of plaintiffs. Had the college been described as a "School of Shorthand or Business," etc., "at ———, Minnesota," the use of the words clearly could not have been the subject of criticism.

Plaintiffs adopted their trade-name one year prior to the organization of the defendant corporation. As we have seen, the names of the parties and place and nature of the business are identical. The trial court found that such names were adopted by both parties for a lawful purpose, and without intent by either to compete unfairly with the other, or to "unfairly obtain from said post office the mail intended for the other," but that confusion and delay in its delivery would naturally result. We have only to inquire whether, in the face of a negative finding, the selection by defendants of the acquired trade-name of a rival must be deemed to have been made with an intent to compete unfairly, or whether such intent is immaterial.

The rule is settled that, in the absence of statutory provisions regulating the subject, parties organizing a corporation must choose a name at their peril, and that the use of a name similar to one adopted by another corporation may be enjoined at the instance of the latter, if misleading and calculated to injure its business. Newby v. Oregon C. Ry. Co., Deady, 609, Fed. Cas. No. 10,144; Holmes v. Holmes, 37 Conn. 278; Farmers v. Farmers (Sup.) 21 Abb. N. Cas. 104, 1 N. Y. Supp. 44; Higgins v. Higgins, 144 N. Y. 462, 39 N. E. 490; Celluloid Mnfg. Co. v. Cellonite Mnfg. Co. (C. C.) 32 Fed. 94; R. W. Rogers Co. v. Wm. Rogers Mnfg. Co., 70 Fed. 1017, 17 C. C. A. 576; Plant v. Michel, 37 Mo. App. 313. As was stated in Armington v. Palmer, 21 R. I. 109, 42 Atl. 308: "The principle upon which these cases rest is that, although a corporation may be legally created, it can no more use its corporate name in violation of the rights of others than an individual can use his name, legally acquired, so as to mislead the public and to injure another."

Some confusion has arisen in the discussion of trade-mark and trade-name cases, but the principles applicable to each are in some though not in all particulars analogous. In the Armington case it was held injunction would lie to prevent the use of a similar name,

even in the absence of proof of actual damage or of a fraudulent intent.

In North Cheshire & Manchester Brewery Co., Limited, v. Manchester Brewery Co., Limited [1899] App. Cas. 83, it appeared the North Cheshire Brewery Company, Limited, without intent to deceive, reorganized as the North Cheshire & Manchester Brewery Company, Limited. The court, at the instance of the Manchester Brewery Company, a then existing corporation, enjoined the use of such name.

In the American Clay Mnfg. Co. v. American Clay Mnfg. Co. of New Jersey, 198 Pa. St. 189, 47 Atl. 936, the defendant was enjoined from using its name. It was held that the motives of the parties attempting its wrongful appropriation were immaterial.

In Higgins v. Higgins, supra, the court, in holding that an exclusive right may be acquired in the name in which a business may be carried on, whether that of a partnership or an individual, say: "But if the name was assumed in good faith, and without design to mislead the public and acquire plaintiff's trade, the defendant, knowing the facts, must be held to the same responsibility as if it acted under the honest impression that no right of the plaintiff was invaded."

In Holmes, Booth & Hayden v. Holmes, Booth & Atwood Mnfg. Co., 37 Conn. 278, the court enjoined the use of a like name, and, in assigning reasons therefor, say: "Where the probable and ordinary consequences of a man's acts will be to benefit himself to the injury of another, his intention to produce that result may be legitimately inferred." See also Red Polled Cattle Club v. Red Polled Cattle Club, 108 Iowa, 105, 78 N. W. 803; Bissell Chilled Plow Works v. T. M. Bissell Plow Co. (C. C.) 121 Fed. 357; Enoch Morgan's Sons Co. v. Whittier-Coburn Co. (C. C.) 118 Fed. 657; Glucose v. American Glucose (N. J. Eq.) 56 Atl. 861.

Boston v. Boston, 149 Mass. 436, 21 N. E. 875, is not inconsistent with this holding. That was an application for the purpose of excluding defendants from exercising its corporate franchise. The court merely held that whatever remedy plaintiff was entitled to was of a private nature, and must be invoked in an action to enjoin.

Neither does Delaware & H. Canal Co. v. Clark, 13 Wall. 311, involve the issue presented. In that case rival coal companies owned

coal mines in the Lackawanna Valley, Pennsylvania, which produced the same general class of coal. The court barely held that the company first using the word "Lackawanna" in describing its coal was not, as a matter of law, entitled to exclude a rival from the use of this term for a like purpose, and found as a fact that such coal, in its generic character, was properly so designated.

We are of the opinion that the probable and ordinary consequences of the act, as distinguished from the specific intent or motive of the parties in choosing a trade-name theretofore lawfully appropriated by others, must constitute the test. The use by defendants in such business of the name "Crookston Marble Works" will lead to confusion and delay in carrying on, and will injuriously affect, the business of plaintiffs who first rightfully adopted it. We are unable to find that the misdirection of mail intended for the Northwestern Marble Works operated to give its members a vested right in a name so erroneously used.

Judgment reversed, with directions to the trial court to amend its conclusions of law, and direct the entry of judgment in favor of plaintiffs, perpetually restraining defendants from in any manner using the name "Crookston Marble Works" in conducting the business of said corporation as a manufacturer and dealer in marble at Crookston, Minnesota.