## NORTHWESTERN KNITTING COMPANY v. ISRAEL GARON.[1]

November 4, 1910.

Nos. 16,582—(19).

**Right to use trade-name — presumption of fraud — injunction.**

Plaintiff was incorporated in 1887 under the name of "Northwestern Knit-

[1]Reported in 128 N. W. 288.

112 M.—21.

ting Company," and has since been engaged in an extensive business of knitting articles of underwear and disposing of the same to dealers throughout the United States, conducting all its business under its corporate name at the city of Minneapolis. About fifteen years after the establishment of plaintiff's business, defendant opened a factory at Duluth for the manufacture of knit sweaters and a heavy article of knit underwear, adopting the name "Northwestern Knitting Mill." He did not know of the existence of plaintiff at the time, and plaintiff did not learn of his presence in the same field for several years; but, immediately upon learning that defendant was operating under the particular name, plaintiff gave notice of its prior adoption of the same and demanded that defendant discontinue its use. This he refused to do, and insists upon the right to use the same. It is *held* that:

1. By its prior adoption of the name, and its continued use for a long series of years, plaintiff acquired trade-name rights therein, and is entitled to protection under the doctrine of unfair competition.

2. Defendant's use of the name is likely to cause confusion in the trade, deceive the public, and to substantially prejudice the rights of plaintiff.

3. Though defendant adopted the name in ignorance of plaintiff, and without any intention of diverting its trade, his continuance in its use after notice of plaintiff's prior rights is presumptively fraudulent.

4. Fraud is presumed in such case, and need not be affirmatively shown.

5. The product of the parties is of the same general class.

Action in the district court for St. Louis county to restrain defendant from using the name "Northwestern Knitting Mill" or any other name that is a colorable imitation of plaintiff's corporate name; from doing any act tending to cause the public to believe it is dealing with plaintiff when it is in fact dealing with defendant; from selling any knit goods manufactured by him as manufactured by plaintiff, and for an accounting. The answer admitted that for seven years defendant had been doing business under the name of "Northwestern Knitting Mill," but alleged he knew nothing of plaintiff's existence until the spring of 1908; denied that any confusion had ever occurred between the names Northwestern Knitting Mill and Northwestern Knitting Company and denied that he had ever diverted any of the established business of plaintiff. The case was tried before Ensign, J., who made findings of fact, the substance of which is stated in the opinion, and as conclusion of law

ordered judgment in favor of defendant. From an order denying plaintiff's motion for a new trial, it appealed. Reversed and new trial granted.

*A. C. Paul,* for appellant.

*Baldwin, Baldwin & Dancer,* for respondent.

BROWN, J.

Action in equity to restrain and enjoin defendant from using in the conduct of his business the name "Northwestern Knitting Mill," on the ground of prior appropriation of the name by plaintiff. Defendant had judgment, and plaintiff appealed from an order denying a new trial.

The facts are fully stated in the findings of the trial court, substantially as follows: The plaintiff, Northwestern Knitting Company, is a corporation organized in 1887, under the laws of the state of Minnesota, having its principal place of business at Minneapolis, in said state. Its business since its incorporation has been the manufacture and sale of knit underwear of some twenty different varieties, all sold under the company's trade-mark "Munsing;" that trade-mark having been adopted by the company about seventeen years ago, and having been registered under the acts of congress and the statutes of Minnesota. The company has never manufactured sweaters, and does not manufacture any so-called lumbermen's underwear. Plaintiff's underwear is sold in every state and territory of the United States, and it employs between six hundred and seven hundred operatives in its factory. All its business of every nature is transacted under the corporate name, "Northwestern Knitting Company," which name is put upon the boxes and packages in which its goods are packed and appears as well upon its letterheads and upon all of its stationery and advertising material. The company sells to retailers only, and to many of the dealers in Duluth, Superior, and the range towns of Minnesota. Its traveling men have for many years past visited Duluth and the towns in its vicinity once or twice a year, selling plaintiff's goods. The value of the goods thus sold in Duluth and vicinity has averaged for some years past from $3,500 to $5,000 per year.

The defendant, Israel Garon, about seven years ago started in business under the name of "Northwestern Knitting Mill," at Duluth, Minnesota, making only sweaters, first by hand and afterwards by machinery. Thereafter he took in a partner, and the firm did business under the name of "Northwestern Knitting Mill Company" for a time. About three years ago the partnership was dissolved, and since that time defendant has continued in business under the name of "Northwestern Knitting Mill." During a part of said three years defendant manufactured one number of underwear, a heavy lumbermen's underwear, and is still engaged in selling off such of said underwear as remains in stock, although he has not manufactured it for some time last past. His sole business is now the manufacture and sale of sweaters. During the last three years he has manufactured and sold about $60,000 worth of his goods, $30,000 worth in the last year.

Neither plaintiff nor defendant ever heard of each other prior to the spring of 1908. The underwear manufactured by plaintiff, and the underwear and sweaters manufactured by defendant, were all made on knitting machines by a knitting process. Defendant has sold his underwear, and now sells his sweaters, to many of the leading retailers of Duluth, Superior, and the Minnesota range towns. He has expended considerable sums of money in advertising his business and for stationery and labels bearing the name "Northwestern Knitting Mill." The court also found that defendant adopted the name "Northwestern Knitting Mill" in ignorance of the existence of plaintiff corporation, and without any intent to acquire any of plaintiff's business or profit by its name or reputation, and he has acquired none of such business, and has not profited by said name or reputation.

1. There is no substantial difference between plaintiff's corporate name, "Northwestern Knitting Company," and that adopted by defendant, "Northwestern Knitting Mill" (Sheffield-King Milling Co. v. Sheffield Mill & Elev. Co., 105 Minn. 315, 117 N. W. 447, 127 Am. St. 574; Celluloid Mnfg. Co. v. Cellonite Mnfg. Co. (C. C.) 32 Fed. 94; Atlas v. Atlas, 138 Iowa, 228, 112 N. W. 232, 15 L.R.A.(N.S.) 625, 128 Am. St. 189; Sterling v. Sterling, 59 N. J.

Eq. 394, 46 Atl. 199), and the questions presented are (1) whether, on the facts stated, plaintiff is entitled to protection in the use of the name; and, if so, (2) whether defendant infringes upon its rights and may be restrained.

2. There is a marked distinction in the law between a trade-mark and a trade-name, though the rights of parties concerned are governed and controlled in a general way by the same equitable rules and principles. A trade-mark is defined as a distinctive name, word, emblem, or device indicating the origin or proprietorship of a particular article of trade or commerce. A trade-name is a word or phrase by which a business or enterprise, or specific articles of merchandise from a specific source, are known to the public, and when applied to merchandise is generic or descriptive, and hence not susceptible of appropriation as a trade-mark. Hopkins, Trade-Marks, §§ 2, et seq.

The trade-mark is protected by courts of equity on the theory of an absolute property right in the holder, and without reference to questions of fraud or damage, while fraud or damage, express or implied, is essential to entitle the holder to protection in the use of a trade-name. Paul, Trade-Marks, 160. In the case at bar plaintiff claims only such rights as attach under the law to a rightfully appropriated trade-name.

3. We have no particular difficulty in according to plaintiff the relief demanded. Plaintiff was incorporated under the particular name, and for over twenty years had carried on its business thereunder. It advertises as the "Northwestern Knitting Company," delivers its product to the trade under that name, and has established an extensive and profitable business. While the name is geographical and descriptive, plaintiff clearly has, under our decisions, as well as under decisions of other courts, trade-name rights, and is entitled to protection therein under the doctrine of unfair competition. Rickard v. Caton College Co., 88 Minn. 242, 92 N. W. 958; Nesne v. Sundet, 93 Minn. 299, 101 N. W. 490, 106 Am. St. 439; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 Sup. Ct. 609, 49 L. ed. 972; Newby v. Oregon Central Ry. Co., Fed. Cas. No. 10,144.

4. The trial court found that defendant adopted the name in good faith, and in ignorance of the prior appropriation thereof by plaintiff, and without any intent to acquire any of plaintiff's business or to profit by its name or reputation, and, further, that he has acquired none of plaintiff's business. It is the contention of defendant that in face of these facts plaintiff is not entitled to relief. We are unable to concur in this view of the case. In addition to the facts stated, the court below also found that before the commencement of the action, and, as shown by the evidence, as soon as plaintiff discovered that defendant was making use of the name, plaintiff demanded that he desist from so doing. This demand defendant refused to  comply with, and still insists upon the right to use the name and to conduct his business thereunder.

The purpose of the law controlling questions of this kind is the prevention of a fraudulent interference with rights of the lawful holder of a trade-name and the protection of the public from imposition. In trade-mark cases the wrongful appropriation of the mark of another authorizes equitable relief, without reference to fraud or deception; but fraud, express or implied, is essential to relief in cases where only a trade-name is involved.

This fraud may be shown by direct proof, or it may be inferred from circumstances, or conclusively presumed from the acts and conduct of the defendant, without regard to his specific intent or good faith.   Church & Dwight Co. v. Russ (C. C.) 99 Fed. 276; Griswold v. Harker, 62 Fed. 389, 10 C. C. A. 435; Fuller v. Huff, 104 Fed. 141, 43 C. C. A. 453, 51 L.R.A. 332.   If it affirmatively appears that the later user of a particular name intends to deceive the public, or wrongfully to appropriate the business of his rival, equity will interpose its restraining authority; and in those cases where his conduct in making use of the name necessarily and naturally will result in confusion and deception the law will, even in the face of a protest of good faith, conclusively presume the fraud essential to equitable relief.   Griswold v. Harker, supra; Nims, Unfair Competition, 54.

In Fuller v. Huff, supra, it was held that, where the simulation of an existing trade-name is manifestly liable to deceive purchasers as

to the origin and manufacture of goods, it is not necessary to show actual deception or intentional fraud.   See also Atlas v. Atlas, supra.   Such is the rule of this court.   Nesne v. Sundet, 93 Minn. 299, 101 N. W. 490, 106 Am. St. 439.

Though in the case just cited it appeared that the place of business of both parties there before the court was at Crookston, that fact cannot in any proper view change the situation.   In the case at bar plaintiff's place of business is Minneapolis, and defendant's at Duluth.   Yet both are dealing with traders in the same territory, and confusion and deception is as likely to arise as though their place of business was the same.   The fact that the parties were engaged in their manufacturing enterprises at different places was involved in the case of Fuller v. Huff, supra, and was disposed of as not controlling, and that the similarity in name was calculated to deceive and relief was granted.

In the Nesne case it was said by Mr. Justice Douglas that "the rule is settled that, in the absence of statutory provisions regulating the subject, parties organizing a corporation must choose a name at their peril, and that the use of a name similar to one adopted by another corporation may be enjoined at the instance of the latter, if misleading and calculated to injure its business."   It was also held in that case that the question of good faith or actual intent to defraud was immaterial, and that fraud would be assumed from the similarity in name of two concerns engaged in the same line of business.

Defendant's good faith at the time of the adoption of the name may be taken for granted; but his persistence in continuing its use after notice of plaintiff's prior right sufficiently indicates actual bad faith, if such were necessary to be shown.   It was said in Fuller v. Huff, supra, that, although the intent of defendant when he commenced to use the name was innocent, the continuance, after he learned of plaintiff's prior adoption thereof, "indicates deliberate intention to use the name, without reference to complainant's possible prior rights."

In the case at bar plaintiff adopted the name long before defendant commenced his operations, and had established a reputation in

the trade for the quality of its product. Defendant commenced his business in a small way, and prior to 1908, perhaps, no confusion arose; but since that time his business has been increasing, and the result in the future naturally and necessarily to follow from the use of the same name by both is apparent and obvious, in view of which it is clear, within the authorities, plaintiff is entitled to the relief demanded, if defendant's business comes within the same class with plaintiff's. Rickard v. Caton College Co., 88 Minn. 242, 92 N. W. 958; Dennison Mnfg. Co. v. Thomas Mnfg. Co. (C. C.) 94 Fed. 651; Consolidated Ice Co. v. Hygeia Distilled Water Co., 151 Fed. 10, 80 C. C. A. 506.

5. It is contended that defendant is not engaged in placing upon the market the same class of goods as those manufactured by plaintiff, and that, inasmuch as plaintiff has no exclusive right to the name, it being geographical and descriptive, judgment below was properly awarded in his favor. This contention must, on the authorities, be resolved against defendant.

The business of both parties is the manufacture of knit goods; plaintiff confining its operations to knit underwear, and defendant to knit sweaters and heavy lumbermen's underwear. A short time before the trial of the action defendant ceased manufacturing his article of underwear, and limited his product to sweaters. The fact that he abandoned this part of his work changes in no essential respect the question presented. If the judgment ordered below were to be affirmed, he could reopen his establishment and again turn out his previous article of underwear. But eliminating the article of heavy underwear, the question whether both parties are engaged in the manufacture and sale of articles of knit wearing apparel of the same general character or class must be answered against defendant.

A reference to a few of the authorities will aid in solving the question. In Amoskeag v. Garner, 54 How. Pr. (N. Y.) 297, plaintiff had for a number of years used its corporate name on cotton goods, but not on prints and calicoes. Defendant used the name "Amoskeag" upon his prints and calicoes. In an action to restrain the further use thereof by defendant, the court held that the goods

were of the same general class, and granted the injunction prayed for.

In Carroll v. Ertheiler (C. C.) 1 Fed. 688, it appeared that plaintiff had adopted the words "Lone Jack" to designate smoking tobacco manufactured by him, and defendant applied the same words to "cigarettes." He was restrained from further use of the name.

In Collins Co. v. Oliver Ames & Sons Corp. (C. C.) 18 Fed. 561, plaintiff was a manufacturer of metal edge tools of steel—axes and picks—stamping them "Collins & Co.," under which it had established a reputation both in the United States and in Australia. Defendant subsequently began to manufacture shovels and to stamp them "Collins & Co.," placing them upon the market for sale in Australia, where plaintiff had never sold shovels, but where its mark was highly respected on edge tools. An injunction restraining further use of the mark by defendant was granted. See also to the same effect, Eno v. Dunn, L. R. 15 App. Cas. 252.

In Bass, Ratcliff & Gretton v. Feigenspan (C. C.) 96 Fed. 206, it was remarked that courts should not be astute to recognize in favor of an infringer fine distinctions between different articles of merchandise of the same general nature, and should resolve against the wrongdoer any fair doubt whether the public may or may not be deceived through the application of spurious symbol. In that case it was held that "pale ale" and "half and half" must, against a manufacturer of the latter and an infringer of a trade-mark attached to the ale, be treated as malt liquors, and substantially similar to each other, and belonging to the same class.

In Omega v. Weschler, 35 Misc. 441, 71 N. Y. Supp. 983, it appeared that plaintiff was a manufacturer of "Omega Oil," a liniment extensively advertised as a remedy for certain skin diseases. Defendant commenced the manufacture of soap, and placed it upon the market as "Omega Oil Medicated Soap." He was restrained. The court, in disposing of the case, said that the adoption of the words "Omega Oil" by defendant was calculated to deceive the public into the belief that plaintiff's article was being put on the market in another form, and therefore an infringement of plaintiff's previously acquired right. For further illustrative cases, see Hopkins,

Trade-Marks (2d Ed.) 268; and Hesseltine, Trade-Marks, 92 et seq.

No logical or substantial distinction, from the standpoint of the likelihood of defendant's product, limited to sweaters, being taken by the public as that of plaintiffs, can well be made. That is the test in such cases. Hopkins, Trade-Marks, 269. We affirm, therefore, that they are of the same general class within the meaning of the law.

Plaintiff's point that judgment should be entered in its favor is not sustained. The appeal is from an order denying a new trial, and the judgment, if any has been entered, is not before us. In the Nesne case the appeal was from the judgment.

Order reversed and a new trial granted.